JOSEPH M. BAJDEK'S CASE.

Suffolk.    May 8, 1947. — May 29, 1947.

Present: FIELD, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Workmen's Compensation Act*, Incapacity.

Evidence in a proceeding under the workmen's compensation act warranted findings that an injury to the employee's hand prevented his doing the same work as before the injury; that, after he had worked at lighter work for the same employer at the same or higher wages for about a year, he voluntarily took a job with another employer at less wages because of a reasonable apprehension that he would be laid off by his former employer; and that due to the injury he had suffered an impairment of his earning capacity and was partially incapacitated.

CERTIFICATION to the Superior Court of a decision of the Industrial Accident Board awarding compensation under the workmen's compensation act.

A decree dismissing the claim was entered by order of *Cabot,* J.  The employee appealed.

*M. Rubin,* for the claimant.

*John J. Sullivan, (John J. Buckley* with him,) for the insurer.

WILKINS, J.    On November 23, 1944, the employee, a stock clerk, while unloading stock, suffered an injury to his right hand, resulting in fractures of three fingers.  Based upon an average weekly wage of $54.02 he was paid compensation for total incapacity up to December 3, 1944, when he signed a discontinuance.  He returned to the employ of the insured as an inventory clerk, and received the same or more pay until December 15, 1945, when he left to take a clerical position at less pay with another employer.  There was a hearing before the single member as to whether, as a result

of his injury, there was partial incapacity subsequent to December 15, 1945. G. L. (Ter. Ed.) c. 152, § 35, as appearing in St. 1945, c. 717. See now St. 1946, c. 321, §§ 3, 4.[1] The single member found that the employee was partially incapacitated; that from December 15, 1945, to June 1, 1946, he had a weekly earning capacity of $33.50, and was for that period entitled to compensation of $13.68 a week in the amount of $326.37; that from June 1, 1946, to October 8, 1946, he had a weekly earning capacity of $35.50 and was, for that period entitled to compensation of $12.35 a week in the amount of $227.59; and that since October 8, 1946, he had a weekly earning capacity of $37.50 and was entitled to compensation of $11.01 a week, and continuing, subject to the workmen's compensation act; and that there was due to the employee up to October 8, 1946, a total sum of $553.96. The reviewing board, with one member dissenting, affirmed and adopted the findings of the single member and awarded compensation in the amount of $697.09 up to January 6, 1947. In the Superior Court a decree was entered dismissing the claim, and the employee appealed.

This court will not reëxamine questions of fact decided by the single member or the reviewing board if there is evidence to sustain the findings, unless different findings are required as matter of law. *Griffin's Case*, 315 Mass. 71, 73, and cases cited. This court will sustain the general finding if possible. *Zucchi's Case*, 310 Mass. 130, 133. *Sawyer's Case*, 315 Mass. 75, 79.

The employee testified that as a result of the injury he lost the use of two joints of the middle finger, which he cannot now bend; that his little and ring fingers were almost completely severed, but have healed, and are now numb; that he can close his hand except that the middle finger sticks out and the ring and little fingers do not come into the palm completely; that ten days after the injury he went back to work with his hand still bandaged; that he was given light work as an inventory clerk, and scribbled with

---

[1] Specific compensation for twelve weeks for the loss of use of the middle finger was accepted by the employee. G. L. (Ter. Ed.) c. 152, § 36 (m), as appearing in St. 1935, c. 333.

his left hand; that he did inventory work for a year, at one time being given a rating as a checker and receiving a five cent an hour raise; that, when he ceased working for the insured, he was receiving more money than prior to the accident; that following the injury he lifted pans onto shelves with his left hand and had the help of another employee; that he cannot do his former work because he is not sure of his hand, and if he happens to forget his hand, he drops what he is holding; that he has not the same strength in his hand as before; that in his present position with his new employer he does office work, and handles no merchandise; and that if he had a good right hand, there would be other work he could get with his present employer, as there is a job open in the stockroom at which he would receive more money, but which he turned down because of his hand.

Dr. Killoran, called as a witness by the insurer, testified that the employee has a functional loss of the middle and distal phalanges of the third finger of the right hand; that in his opinion the employee can work with the hand as it is, and can do any ordinary type of work where his hand must be used; that he can use his right hand in doing the work of a stock clerk, which involves picking up material weighing from ten to twenty-five pounds; and that he can use the fourth and fifth fingers as well as normally, although they do not flex completely. The doctor further testified that he did not know that the fourth and fifth fingers had been fractured; that other than from an external examination he did not know what is wrong with them; that the employee's earning capacity is affected by the fact that the middle finger sticks out when he clenches his fist; that due to that there are certain things the employee cannot do; and that as a result of this "residual condition" his earning capacity has been definitely lowered.

The findings as to the amounts of earning capacity were based upon the employee's testimony as to his actual wages in his new clerical position. Apart from the circumstances of the termination of the employment hereinafter discussed, the finding of partial incapacity was warranted by the

evidence.  The board, by adoption of the decision of the single member, based that finding upon "all the evidence, particularly the testimony of Dr. Killoran," and specifically referred to the doctor's testimony that "because of the residual condition of the employee's injured hand, his earning capacity has been definitely impaired."  Notwithstanding the contention of the insurer that the doctor at that time was testifying in general, we think that such testimony of the doctor could be considered along with the employee's testimony as pertinent to the work of a stock clerk, and that the doctor's earlier testimony that in his opinion the employee could still perform that work did not have to be accepted.

The principal question is whether the testimony of the employee as to the circumstances of his leaving the employ of the insured as matter of law required a different finding on the issue of partial incapacity.  The employee testified that he left in December, 1945, because the help was being changed, and he knew it was his turn next; that he had no trouble doing the inventory work because it was light work; that he told the insured that he was getting through to take another job; that he was not "fired" but left voluntarily; that no one suggested that he was going to be let go; that the man in charge of the stockroom told him that he was trying to keep him and another employee, but that he did not know what the union would do about it; that if he had been let go, it would have been because of the union rule as to seniority; that the reason he left was because the rule of the union might result in his losing his job; that he "left because he knew he wasn't going to hang on on account of the rule on seniority"; that he did not try to get work other than his present clerical job; and that he was offered something else, but did not think he could do it, and took the lighter work.

The insurer urges that the claim for further compensation should be dismissed, and argues that, on the evidence, the employee is able to do practically the same work as he did prior to his injury, and that he left his employment for reasons not associated with his accident.  Reliance is placed

upon *Driscoll's Case*, 243 Mass. 236, and *Capone's Case*, 239 Mass. 331. But in those cases, for one thing, it did not appear, as it does here, that the employee's efficiency in his former employment was impaired by the injury. See *Dragon's Case*, 264 Mass. 7, 9; *Percival's Case*, 268 Mass. 50, 54; *Hurwitz's Case*, 280 Mass. 477, 481–482. As an inventory clerk, the employee was engaged in a lighter type of work than that of stock clerk. The evidence did not require a finding that the employee was able to perform practically the same work as before. Indeed, there was testimony to the contrary permitting a finding that he could no longer alone do the lifting required of a stock clerk. The issue was whether there was an impairment of earning capacity. *Federico's Case*, 283 Mass. 430, 432. The board was not concluded by the mere fact that during his employment as inventory clerk he received wages equal to, or more than, those he had received as stock clerk. *Percival's Case*, 268 Mass. 50, 54–55, and cases cited. With respect to the contention that he left the employ of the insured for reasons unconnected with his injury, the board could have concluded that the employee's belief that he would be laid off under the union seniority rule was reasonable, and that while his leaving the insured was voluntary in the sense that the decision was his own, the underlying ground was his desire to remain employed consecutively and without interruption. In any event, we cannot say as matter of law that the circumstances of his changing jobs prevented a finding of partial incapacity. Such a ruling would mean that an employee, injured in circumstances otherwise entitling him to compensation, must, under penalty of losing that right, forego employment elsewhere and remain with an employer and engage in a lighter type of work for at least as long as he receives wages at a rate not lower than before his injury, notwithstanding his reasonable apprehension that he might be laid off.

The decree must be reversed and one entered in accordance with the findings and decision of the board.

*So ordered.*