581 P.2d 682

Robert A. MONTANO and Marylou Montano, husband and wife, Appellants,

v.

SCOTTSDALE BAPTIST HOSPITAL, INC., a corporation, O. Melvin Phillips, M. D., Jack O. Hubbard, M. D., Orthopedic Center, Ltd., and Phillips and Hubbard, M. D.'s, P. C., Appellees.

No. 13161.

Supreme Court of Arizona, In Division.

May 31, 1978.

Rehearings Denied June 27, 1978.

Rees, Mercaldo & Smith by Paul G. Rees, Jr., Tucson, Wade, Robson, Palmer & Nelson by Charles I. Robson, V, Mesa, for appellants.

Miller, Mark & Seidel by John H. Seidel, Phoenix, for appellees Phillips and Hubbard.

Jennings, Strouss & Salmon by W. Michael Flood, Phoenix, for appellee Scottsdale Baptist Hospital.

STRUCKMEYER, Vice Chief Justice.

In this suit for medical malpractice, the plaintiffs appeal from an adverse jury verdict and the judgment entered thereon. Jurisdiction was accepted pursuant to 17A A.R.S. Rules of the Supreme Court, Rule 47(e).

The plaintiff, Robert A. Montano, injured his wrist while in the course of his employment. Eventually he was treated by Jack Hubbard, M.D., of the Orthopedic Center, Ltd., Scottsdale, Arizona. Dr. Hubbard hospitalized the plaintiff at the Scottsdale Baptist Hospital on Sunday, August 23, 1970. The next day at approximately 10:00 a. m., Dr. Hubbard operated on his right wrist. There were no complications during surgery, but thereafter plaintiff complained of pain. Dr. Hubbard in writing directed that plaintiff be given one-quarter grain of morphine sulfate, intramuscularly every three hours as needed to combat pain.

That evening and later that night, plaintiff was given several additional dosages of morphine, at least one of which was given at the direction of the defendant, Dr. Phillips. Around 8:00 or 9:00 p. m., plaintiff complained of being hungry and asked his wife for something to eat. Mrs. Montano inquired at the nurse's station if she should give plaintiff food. After receiving permission from the nurse on duty, she purchased a hamburger and a malt. Some time after plaintiff had consumed this food, Mrs. Montano left the hospital and returned home.

At approximately 11:15 p. m., plaintiff suffered a "code arrest." Exactly what is meant by "code arrest" does not appear in the record; however, plaintiff stopped breathing and lapsed into unconsciousness. Dr. John Currin, a hospital employee, administered Nalline, a drug used to counteract narcotic overdose, and completed on a hospital form his diagnosis as a "narcotic overdose." Later, while in the intensive care unit and unconscious, plaintiff was catheterized. On attempting to remove the catheter, Dr. Currin realized the bulb was only partially deflated. Unable to push the bulb back into the bladder, he pulled it through the urethra, inflicting damage to the plaintiff's urethra and penis.

Plaintiffs filed a complaint in the Pima County Superior Court on December 3, 1971, approximately one year and four months after the above-stated incident. They alleged medical malpractice. The complaint named John Doe, Richard Roses 1 to 10, Scottsdale Baptist Hospital, and XYZ Corporation. It did not name specifically

**450**

Dr. Phillips or Dr. Hubbard. The complaint and summons were served on Dr. Phillips and Dr. Hubbard on September 19, 1972. At that time, Arizona had a statute of limitations of two years for injuries to the person, A.R.S. § 12–542(1). The running of the period of limitations commenced from the date of the negligent act.

Defendants Hubbard and Phillips answered, denying any negligence. More than two years later, on October 4, 1974, they applied to the Superior Court for leave to amend their answer to assert the running of the statute of limitations. They also moved for summary judgment. The court denied the motion for summary judgment, but granted the motion to amend. After trial, the jury was instructed to the effect that if the plaintiffs knew or could have determined the facts which formed the basis of their claims against Dr. Hubbard and Dr. Phillips on or before September 18, 1972, the jury verdict "must be in favor of [them] because under the Arizona Statute of Limitations the PLAINTIFFS' claim would be barred."

Plaintiffs' first claim of error is predicated on the assertion that it was only necessary for plaintiffs to file their complaint before the expiration of the two-year period of limitations fixed by A.R.S. § 12–542, and thereafter serve the summons within one year, the period of time allowed by Rule 6(f) of Arizona Rules of Civil Procedure. Plaintiffs argue that reversible error was committed by the court when it permitted the individual doctors to amend their answers and submitted to the jury as a factual question whether the statute of limitations had run prior to the service of summons on the individual doctors. It is the plaintiffs' position that as a matter of law they timely commenced the action within the period of limitations, since the action

was commenced a year and four months after the events of which complaint is made.

Section 12–542 provides in part:

"There shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:

1. For injuries done to the person of another."

■ In *Hagenauer v. Detroit Copper Mining Company*, 14 Ariz. 74, 124 P. 803 (1912), the court found ¶ 2950 of the Statutes of 1901 (now § 12–542, supra) was adopted in the Territory of Arizona in 1887 from Texas. It was held that the application of the statute in Texas made before its adoption ought to have great weight if not binding force and that in such cases the construction is adopted which is well known to the profession. The Texas interpretation of the statute must therefore be given great weight.

In *Owen v. City of Eastland*, 124 Tex. 419, 78 S.W.2d 178 (1935), it was stated that the Texas courts had uniformly held that the mere filing of a suit does not interrupt the running of limitations; that the statute provided the suit must be "prosecuted" as well as "commenced," and that it is not sufficient simply to commence the suit, but there must also be a bona fide intention that process shall be served "at once" upon the defendant. The Texas court concluded that it was more reasonable to believe that the legislature intended to afford a defendant the means by which he might be relieved of disproving the merits of the claim asserted against him where through the fault of the plaintiff he was not called to defend until the means of disproving the claim was lost through lapse of time.[1]

1. In *Owen v. Eastland*, the court specifically held:

"Our courts uniformly hold that the mere filing of suit on a claim does not interrupt the running of limitation. 28 Tex.Jur. p. 192 et seq. It is to be observed that the various decisions there referred to deal with limitation statutes which, in terms, provide that the suit shall be 'prosecuted' as well as 'commenced.' However, it has been said, in ef-

fect, that the mere filing of the plaintiff's petition is not all that is required to 'commence' the suit, within the meaning of the statutes of limitation, 'but there must also be a bona fide intention that the process shall be served at once upon the defendant.' *Ricker v. Shoemaker*, 81 Tex. 22, 16 S.W. 645, 647. This accords with the well-recognized design of statutes of limitation. At an early day it was held that such statutes are 'statutes of

■ Were we to follow the construction adopted in Texas, we would be compelled to conclude that the plaintiffs' action was lost through inaction, since it is plain that no attempt was made to serve the doctors "at once." However, the Arizona Legislature has provided a more extended period.

By Rule 6(f) Rules of Civil Procedure, 16 A.R.S.:

"An action shall abate if the summons is not issued and served * * * within one year from the filing of the complaint."

Rule 6 is derived directly from R.S. 1913 § 460. It is therefore clear that the Legislature did not intend to leave the important time for summoning a defendant to court to judicial improvisation as to when a claim was lost by lapse of time and that a period was intended to be provided during which a summons must be served in order that the action not abate.

In *Gideon v. St. Charles*, 16 Ariz. 435, 438, 146 P. 925, 927 (1915), in discussing a question similar to that presented here, we said:

"The statute [Rule 6(f), supra], as we see it, fixes the time for prosecuting the suit, after it is commenced, as one year by providing that a summons may be issued within that time. In the absence of such a statute, the reasoning of the Texas rule would be applicable, and diligence and good faith would become a question of fact in all cases wherein there was delay in issuing or serving the summons after the expiration of the statute of limitation. The presence of the statute definitely fixes the time as one year after the commencement thereof by filing com-

plaint, as the time within which it must be 'prosecuted' by issuing summons."

And see *Murphey v. Valenzuela*, 95 Ariz. 30, 386 P.2d 78 (1963), and *Taylor v. Superior Court*, 13 Ariz.App. 52, 474 P.2d 59 (1970).

■ Accordingly, we conclude that an action which is filed within the time limit provided by the statute does not abate unless the plaintiff fails to have process issued and served upon the defendant within one year after filing.

The defendants, Phillips and Hubbard, however, argue that if a complaint which designates certain of the defendants by fictitious names is filed prior to the running of the statute of limitations, its filing does not toll the statute and the statute continues to run until the defendants are served and their true names added to the complaint. We first note that such a construction would work a discrimination against a plaintiff who files against an unknown defendant. In that case, a plaintiff has only the remainder of the two-year period in which to serve the defendants with process, whereas in the case of known defendants there is concededly two years to file the complaint and a full year thereafter to "commence" the action by serving process. Such a discriminatory distinction ought not be found unless a different result could not reasonably be reached. However, we do not find it necessary to answer this question.

By Rule 15(a), Rules of Civil Procedure, 16 A.R.S., an answer may be amended after 20 days only by leave of the court or by written consent of the adverse party. But

repose to quiet tiles, to suppress frauds, and to supply the deficiencies of proof arising from the ambiguity, obscurity and antiquity of transactions'; and the rule was laid down that limitation statutes should 'receive such interpretation consistent with their terms, as would defeat the mischief intended to be suppressed, and advance the policy and remedy they were designed to promote.' *Gautier v. Franklin*, 1 Tex. 732. This, in effect, has been repeated in later cases. *Harrison Machine Works v. Reigor*, 64 Tex. 89; *Howard v. Windom*, 86 Tex. 560, 26 S.W. 483. See, also, 17 R.C.L. p. 664. Taking these pronouncements as a guide, no reason occurs for

ascribing to the instant statute a design in any respect different from that of the others. It is hardly reasonable to suppose that, in passing this statute, the Legislature considered that the mere filing of the suit within the prescribed time would expel the evil which the statute was designed to reach. It is far more reasonable to conclude that the intention was to afford means by which the defendant in the suit may be relieved of disproving the merits of the claim asserted against him where, through the fault of the plaintiff, he is not called to defend until the means of disproving same is presumably lost through lapse of time." 78 S.W.2d at 179.

leave to amend shall be given when justice requires. In the instant case, the individual defendants filed an answer October 10, 1972, and on the merits denied liability. They neither pleaded the statute of limitations nor questioned the manner of their service. Nearly two years later, on October 4, 1974, by motion to amend their answer, they raised the question of the applicability of the statute of limitations.

■ It is a rule of ancient and universal application that a general appearance by a party who has not been properly served has exactly the same effect as a proper, timely and valid service of process. See *Jardine v. Superior Court*, 213 Cal. 301, 2 P.2d 756 (1931); *Olcese v. Justice Court*, 156 Cal. 82, 103 P. 317 (1909); *Dotson v. State Highway Commission*, 198 Kan. 671, 426 P.2d 138 (1967); *Insurance Trust and Agency v. Failing*, 66 Kan. 336, 71 P. 826 (1903); *Thorp Credit, Inc. v. Barr*, 200 N.W.2d 535 (Iowa 1972), cert. dismissed *Barr v. Thorp Credit, Inc.*, 410 U.S. 919, 93 S.Ct. 978, 35 L.Ed.2d 581; *Lonning v. Lonning*, 199 N.W.2d 60 (Iowa 1972).

We quote at length from the Iowa case of *Lonning v. Lonning:*

"The rules which govern our consideration of this case are well established. The filing of a pleading is a general appearance. Rule 65(c), Rules of Civil Procedure. Jurisdiction of the person in a civil case may be acquired by service of notice in the manner and form prescribed by law, or by defendant's general appearance. *Boyer v. Iowa High School Athletic Association*, 258 Iowa 285, 138 N.W.2d 914 (1965); *Emery Transportation Company v. Baker*, 257 Iowa 1260, 136 N.W.2d 529 (1965); *Baker v. Baker*, 248 Iowa 361, 81 N.W.2d 1, supra. A general appearance is a waiver of notice and if a party appears in person or by attorney he submits himself to the jurisdiction of the court. *Humboldt Livestock Auction, Inc. v. B & H Cattle Co.*, 261 Iowa 419, 155 N.W.2d 478 (1967); *O'Connor v. Youngblade*, 250 Iowa 808, 96 N.W.2d 457 (1959)." 199 N.W.2d at 62.

■ By the Rules of Civil Procedure, Rule 5(e), "The filing of an answer shall constitute an appearance." Thus, the appearance of the defendants has the same effect as a timely and valid service of process. Were there a jurisdictional defect by the failure to prosecute the action (serve process) within the time allowed by law, it has been waived by failing to claim it at the earliest opportunity.

■ Moreover, the lower court's action in granting leave to amend to set up the statute of limitations is in direct conflict with Rule 12(b), (h) and (i). Rule 12(b) provides that every defense shall be asserted in the responsive pleading except that certain defenses, including the defense of insufficiency of process and insufficiency of service of process, may be made by motion. The Rule specifically provides that if made by motion it:

"shall be made before pleading if a further pleading is permitted."

Since the defense of insufficiency of service of process was raised by motion after answering to the merits, it was untimely and leave to amend was improperly granted. Rules 12(h) and (i),[2] 16 A.R.S. Rules of Civil Procedure.

2. The pertinent part of Rule 12(i) provides:

"Waiver or preservation of certain defenses. A party waives all defenses and objections which he does not present either by motion as hereinbefore provided, or, if he has made no motion, in his answer or reply, except

(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived * * * (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment there-

of permitted by Rule 15(a) to be made as a matter of course."

This Rule was amended in 1966 to conform with Rule 12(h) of the Federal Rules of Civil Procedure. Moore's Federal Practice Rules Pamphlet, Part 1, at page 432, states:

"Rule 15(a) provides that a party may amend his pleading once as of course prior to the filing of a responsive pleading to that pleading, or, if the pleading is one to which no responsive pleading is permitted, within 20 days after it is served. After the right to amend as of course has run, Rule 12(h) now

It was error for the court to permit the individual defendants to amend their answer and to submit to the jury as a question of fact whether the statute of limitations had run.

Plaintiffs assign as error the impeachment of the plaintiff, Robert Montano, on a collateral matter. This occurred after the plaintiff testified on direct examination that he injured his shoulder while working in the mines, but that he had not collected industrial insurance. There was no issue in the instant case of any injury to the plaintiff's shoulder since he did not attribute such an injury to the defendants' actions. However, on cross-examination, over objection, the plaintiff was questioned as to which shoulder was injured and thereafter counsel offered in chambers their Exhibit 31, which consisted of nine pages of the industrial records concerning a claim Montano had made following a shoulder injury he had suffered while working in the Magma Mine. Counsel to plaintiff objected to the admission of this exhibit since it was "impeachment on a collateral and immaterial matter." The exhibit was nonetheless admitted by the trial court.

■ Palpably, the court erred. No general rule is better established than that a witness cannot be contradicted for the purposes of impeachment as to collateral matters. *State v. Mangrum*, 98 Ariz. 279, 403 P.2d 925 (1965); *State v. Little*, 87 Ariz. 295, 350 P.2d 756 (1960); *Hing v. Youtsey*, 10 Ariz.App. 540, 460 P.2d 646 (1970); *State v. Zappia*, 8 Ariz.App. 549, 448 P.2d 119 (1969), cert. denied, 396 U.S. 861, 90 S.Ct. 132, 24 L.Ed.2d 113. And see *State ex rel. Herman v. Saldamando*, 12 Ariz.App. 474, 472 P.2d 85 (1970). The admission of defendant's Exhibit 31 was error and the subsequent extensive use of the exhibit in the arguments to the jury was prejudicial.

Finally, the plaintiffs complain of the court's instruction No. 9. It states in part:

"It is the duty of a hospital, such as the defendant Scottsdate [sic] Baptist Hospi-

precludes a party from seeking the court's permission to add one of the defenses enumerated above, i. e., lack of jurisdiction over

tal, to use reasonable care in furnishing a patient the care, attention and protection reasonably required by his mental and physical condition.

The amount of caution, attention and protection required in the exercise of reasonable care depends on the known condition of the patient and his needs."

It is the plaintiffs' position that the quoted part of this instruction incorrectly states the knowledge requirement of the hospital. They argue the standard should be what the hospital "knew or should have known" about the condition of its patients. However, we find it unnecessary to reach this question.

■ It is settled that an appellate court will not review on appeal alleged error at trial where the appealing party has failed to make a proper record in the form of an objection, stating specifically the grounds therefor or, if the ruling is one excluding evidence, an offer of proof. M. Udall, Arizona Law of Evidence §§ 12, 13 (1961); Arizona Rules of Evidence, Rule 103. In the case of jury instructions, this rule has been made a part of the Arizona Rules of Civil Procedure. Rule 51(a) states:

"* * * no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *"

■ The record before this Court shows that plaintiffs twice commented on the content of instruction No. 9. Both occurred during the time when the court was finalizing the jury instructions. In response to the court's request that plaintiffs state their objections, counsel for plaintiffs stated:

"[COUNSEL FOR PLAINTIFFS]: * * * On Number 9, I have asked the Court to indicate its previous ruling with reference to Dr. Currin by saying that

the person, improper venue, insufficiency of process, or insufficiency of service of process."

Dr. Currin 'Under his contract with the hospital' as head of one of the departments and as a staff member.

THE COURT: I will adopt that and include it as an insertion."

Later, defense counsel expressed concern with the court's instruction No. 9 and in the discussion which followed, plaintiffs' counsel again had the opportunity to offer the specific criticism which is now being made, but did not.

We hold the error complained of was not timely directed to the attention of the court below and was therefore waived.

Judgment reversed.

HAYS and HOLOHAN, JJ., concur.