862 P.2d 881

**Henry COHN, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Smitty's Super Valu, Respondent Employer,**

**Smitty's Super Valu, Respondent Carrier.**

**No. 1 CA–IC 91–0223**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 12, 1993.

Review Granted Nov. 30, 1993.

Schiffman, Hozier & Kurth, P.C. by K. Casey Kurth, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for respondent employer/carrier.

## OPINION

JACOBSON, Judge.

This review of an Industrial Commission award presents to a third panel of this court a problem that has received varying treatment.[1] We write to add to the already rich mixture discussing the effect of post-injury employment which is terminated for reasons unrelated to the industrial injury when considering loss of earning capacity.

Claimant, Henry Cohn, sustained a low back injury on March 4, 1990 while employed by the self-insured employer, Smitty's Super Valu (Smitty's). His claim for workers' compensation was accepted.

Approximately a month later, on April 16, 1990, claimant was released for light work and while in this status returned to work at Smitty's in August 1990. Because of lifting restrictions, he was unable to return to his former position as a clerk and therefore was assigned to light duty as a cashier. He earned the same wage as a

---

1. *See Arizona Dep't of Public Safety v. Industrial Comm'n,* 170 Ariz. 275, 823 P.2d 1283 (App. 1991) ("D.P.S."); *Kinnard v. Industrial Comm'n,* 170 Ariz. 281, 823 P.2d 1289 (App.1991) ("Kinnard"). The Arizona Supreme Court has granted review in both cases (Feb. 19, 1992).

cashier as he had earned as a clerk. There is no contention that his employment as a cashier was a "sheltered position," that is, a created job offered in sympathy by his employer. There is also no question that claimant could adequately perform this job.

In September 1990, claimant was terminated for misconduct allegedly arising from belligerent behavior toward a Smitty's customer. Following his termination he applied to "almost every retail supermarket chain in Phoenix." He advised these prospective employers about his back injury. He did not find a job until June 22, 1991, when he became employed at Albertson's as a stock clerk.

Smitty's issued a notice of claim status on September 4, 1990 closing claimant's claim with no permanent impairment. This was duly protested. In February 1991, Smitty's reopened the claim for additional medical treatment only.

In March 1991, claimant filed a "1061(J)" [2] request, contending that Smitty's had failed to pay him temporary disability benefits in addition to the medical benefits he was receiving. Smitty's defended this failure on the ground that claimant's loss of earning capacity was related not to his industrial injury, but rather solely to his own misconduct that resulted in the termination of his post-injury employment.

This brings us to claimant's first contention in this court—that he was prohibited from presenting evidence that his termination was not related to misconduct and therefore was wrongful. The administrative law judge resolved this question as follows:

In the present case, the undersigned hearing judge has no jurisdiction to determine whether applicant's employment was properly terminated; however, considering the cited cases, a determination must be made as to whether any loss of earnings was by reason of applicant's industrial injury alone. Applicant's arguments concerning the propriety or impropriety of his termination must be considered by a Court or other State Agency empowered by law so to do. The Industrial Commission is not so empowered....

We agree with the administrative law judge, if the quoted finding relates to the question whether the Industrial Commission should embark upon an inquiry as to whether claimant's termination was without "good cause," which might result in breach of claimant's employment or union contract. However, there is a more subtle argument being advanced here, that is, that both the rehire and the fire were orchestrated to produce a false post-injury earning capacity. If such could be shown, then, as is true in situations invoking "sheltered positions," we would agree that claimant's post-injury earnings would not accurately reflect a post-injury earning capacity. *See Allen v. Industrial Comm'n,* 87 Ariz. 56, 347 P.2d 710 (1959). We therefore must determine whether the administrative law judge improperly prohibited claimant from pursuing an inquiry into the grounds for termination.

After claimant testified that his termination followed immediately after a confrontation with a female customer, the following exchange occurred:

Q. [BY CLAIMANT'S COUNSEL]: Can you tell us a little bit about this lady?

[SMITTY'S COUNSEL]: I object as not being relevant. The fact is, the man has been terminated, and the only issue is whether this termination *is somehow related to his back injury as an excuse for nonpayment of benefits,* so I don't see where the circumstances of termination have to do with the ultimate issue in this case.

[CLAIMANT'S COUNSEL]: Your Honor, I think it's relevant as to what the reasons for the termination were and if there was any underlying reasoning

**2.** A.R.S. § 23–1061(J) provides:

The commission shall investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled....

behind it, *a reason to possibly discharge the Applicant because of his industrial injury.*

[JUDGE]: I don't sit as a labor court.... The only thing that I'm concerned with is the termination as it may relate to his back injury....

(Emphasis added.) The objection was then sustained.

It appears that both counsel were aware of the relevance of testimony regarding whether the termination was a subterfuge. It is more doubtful whether the administrative law judge was likewise attuned to this nuance. However, claimant's counsel did not further educate the administrative law judge on this point nor make an offer of proof that further questioning of claimant would somehow show that the termination was connected either with his industrial injury or a plot to deny benefits. In fact, the next question from claimant's counsel would undercut such a contention:

Q. What was your understanding of why you were terminated?

A. They said I was belligerent towards the customer.

■ Generally, when the alleged evidentiary error involves the inability to pursue a particular area of proof, it is incumbent upon the offeree to advise the court of what this proof might be so both the trial court and this court can evaluate its relevancy and admissibility. *See Warfel v. Cheney,* 157 Ariz. 424, 431, 758 P.2d 1326, 1333 (App.1988). This was not done here. Under these circumstances, we find no error in the administrative law judge's ruling.

This then brings us to the apparently conflicting opinions of this court in *D.P.S.* and *Kinnard.* In *D.P.S.,* a majority of the court held that termination of employment because of misconduct[3] could not cause a forfeiture of all future benefits. The dissent, by Judge Lankford, took the position that a termination unrelated to the industrial injury is simply one of the factors that the administrative law judge may consider

in determining whether claimant's loss of earning capacity was "caused" by the industrial injury, as required by A.R.S. § 23–1044(C).

This position prevailed in *Kinnard,* written by Judge Lankford, which held that:

The fact that the employee was terminated for misconduct does not alone disqualify him from compensation. Rather, that fact merely creates a question of causation for the administrative law judge to resolve.

170 Ariz. at 284, 823 P.2d at 1292. The dissent in *Kinnard,* by Judge Kleinschmidt, seems to take the position that the evidence would show that the inability to obtain reemployment following the termination was related to physical limitations caused by the industrial injury.

■ Without putting too fine a point on it, it appears to us that *D.P.S.* and *Kinnard* and the respective dissents contained therein have one common ground of tacit agreement—that, if the industrial injury is an operative factor in the inability of the claimant to obtain employment following his termination, claimant cannot be precluded from showing a causally related loss of earning capacity.

■ Initially, we agree with this broad general principle. *See* 2 A. Larson, *Workmen's Compensation Law* § 57.64(a) (1992). The question then becomes how the industrial injury as an operative factor is proven and who has the burden of proof. We start with the proposition that post-injury earnings are presumptive of post-injury earning capacity. *Maness v. Industrial Comm'n,* 102 Ariz. 557, 434 P.2d 643 (1967). Thus, once the claimant has returned to a bona fide reemployment, even in a temporary partial disability status, that reemployment should establish post-injury earning capacity. If that employment terminates, the question should become, not whether the termination was the result of misconduct, but whether the termination was somehow related to the in-

---

**3.** In that case, the post-injury employment had continued for two and one-half years, and no contention was made that the employment and termination was a subterfuge to create false post-injury earnings.

dustrial injury. In this regard, we disagree with the concept expressed in *D.P.S.* that legislation is necessary to somehow extract a penalty of a limited nature for a discharge because of misconduct. 170 Ariz. at 279, 823 P.2d at 1287, quoting 2 A. Larson, *supra,* at 10–264 to –269 (1989). Fault is a concept foreign to workers' compensation law and should not be introduced into the "penalty/forfeiture" argument. Rather, the inquiry should simply be whether the termination was unrelated to the industrial injury, that is, was it bona fide in the sense that it was not used as an excuse for non-payment of benefits or was not caused by the industrial injury?

■ If the answer to this question is yes, then the burden should shift to the claimant to show that his inability to obtain new employment is causally related to the industrial injury. This burden properly falls on the claimant because presumptively his loss of earning capacity is unrelated to his industrial injury.

■ Claimant argues that he satisfied this burden by showing that he made a good faith effort to secure additional employment and was unsuccessful, relying upon the line of cases exemplified by *Arden–Mayfair v. Industrial Commission,* 158 Ariz. 580, 764 P.2d 341 (App.1988) (an injured worker may carry the burden of showing a loss of earning capacity by demonstrating that a good faith and reasonable effort was made to secure employment in the area of his residence).

In our opinion, however, such a generalized search fails to take into consideration claimant's temporary disability status. It is clear that claimant at the time he was rehired by Smitty's could not return to his prior position as a clerk because of his industrial injury. He could, however, perform the light duty job of cashier. Because of conduct unrelated to the industrial injury he was terminated from that position. Because Smitty's established claimant's post-injury earning capacity as a cashier, it was incumbent upon claimant to show that he was unable to obtain similar light duty work because of his industrial injury, or if such light duty work was available, that it paid less than the comparable work at Smitty's. This burden is not carried by a generalized search in the labor market because it is understood that claimant is unable to return to something other than light duty work.

Claimant's evidence simply did not focus on whether his industrial injury affected his ability to obtain light duty work. In fact, his search seems to have been for clerking positions with a disclosure of the prior industrial back injury. The question is not whether he can be a clerk but whether his industrial injury precludes him from obtaining work similar to that of a cashier. *See generally Bajdek's Case,* 321 Mass. 325, 73 N.E.2d 253 (1947).

Because claimant did not show post-injury work similar to that afforded by his post-injury employment because of his industrial injury, we conclude that the presumptive post-injury earning capacity has not been overcome.

Claimant also argues that, because uncontradicted medical testimony established he was unable to work from January 11 to February 18, 1991, he was entitled to temporary total disability benefits for that period. Although claimant testified that Dr. Longo took him off work in January 1991, there is no medical evidence in the record to support this testimony. In fact, Dr. Longo's January 11, 1991 medical report stated only that claimant had restrictions on lifting and repetitive bending and was in need of active medical treatment. Dr. Shapiro's February 18, 1991 medical report confirmed that claimant required active medical care, but stated that claimant could perform light work.

■ It is the administrative law judge's duty to resolve all conflicts in the evidence and to draw all reasonable inferences, *Arnott v. Industrial Commission,* 103 Ariz. 182, 183, 438 P.2d 419, 420 (1968), but uncontroverted medical evidence is binding on the Industrial Commission. *Cammeron v. Industrial Comm'n,* 98 Ariz. 366, 371, 405 P.2d 802, 805 (1965).

In this case, the uncontradicted medical evidence established that claimant was capable of performing light work. Even assuming that claimant's testimony conflicts with this evidence, it was within the administrative law judge's discretion to reject that testimony. For that reason, claimant was not entitled to any temporary total disability benefits.

The award is affirmed.

GARBARINO and McGREGOR, JJ., concur.