874 P.2d 315

Henry COHN, Petitioner,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Smitty's Super Valu, Respondent
Employer,

Smitty's Super Valu, Respondent Carrier.

No. CV–93–0072–PR.

Supreme Court of Arizona.

May 3, 1994.

Schiffman, Hozier & Kurth, P.C. by K. Casey Kurth, Phoenix, for petitioner.

Industrial Commission of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, for respondent.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for respondent Employer/Carrier.

## OPINION

ZLAKET, Justice.

Claimant Henry Cohn was employed by Smitty's Super Valu for almost twenty years. His primary job was stocking shelves with grocery items, which frequently required heavy lifting.

On March 4, 1990, while handling a case of milk, claimant fell and hurt his lower back. He had previously injured the same area in a 1986 car accident. On March 13, the indus-trial injury was diagnosed as a lumbosacral strain. Cohn underwent medical treatment and was placed on no-work status for four months. Respondent carrier accepted the claim.

In August 1990, claimant was released to sedentary activity. The carrier thereupon terminated his benefits and closed the case. A week later, Cohn returned to work at Smitty's, but was reassigned to the "light duty" position of cashier because of lifting restrictions. Smitty's paid him $11.21 per hour, the same rate he had earned as a clerk.

In September, a customer complained to the store manager that Cohn had been belligerent with her. As a result, he was called into the manager's office and fired for "insubordination." Claimant later testified that he had not been rude or belligerent. He also asserted that he was denied a chance to explain his side of the story to the manager.

Following his termination, Cohn actively sought jobs at other Phoenix grocery stores. During this time, his back pain worsened. According to claimant's testimony, Dr. Joseph Longo placed him on no-work status in January 1991, and he resumed treatment. In February, at the carrier's request, he saw an orthopedic surgeon who concluded that his back pain was the result of an exacerbation of his previous automobile-related injury. That physician concurred with Dr. Longo's prescription for active medical treatment, but recommended that claimant be released to light work. The carrier reopened Cohn's industrial claim for medical benefits. In March, a magnetic resonance image (MRI) revealed a herniated disc in his lower back. That same month, claimant requested a hearing pursuant to A.R.S. § 23–1061(J),[1] alleging that the carrier was withholding compensation benefits due him for time off work since the date of his termination.

Cohn did not obtain other employment until June 22, 1991, when Albertson's hired him as a part-time grocery stocker. There he earned $9.55 per hour. He performed his

---

1. A.R.S. § 23–1061(J) provides for the commission to "investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled...."

duties by wearing a back brace, taking pain medication, and moving carefully.

Claimant's request was granted, and a hearing was conducted in September. His counsel submitted medical reports and the MRI results, which respondents did not challenge. The parties also agreed that he had been on modified work status since January 1991.

Cohn was the only witness who testified at the hearing. When his counsel began to question him about the circumstances surrounding his return to work and subsequent termination, the lawyer for Smitty's objected. The Administrative Law Judge (ALJ) rejected the testimony despite counsel's argument that Smitty's may have fired Cohn to avoid making compensation payments. The judge ruled that the evidence was irrelevant because he did not have jurisdiction to determine whether claimant had been wrongfully terminated.

The ALJ ultimately found that although Cohn was "properly considered to be in a temporary partial disability status," he was not entitled to compensation for his time off work after September 19, 1990. The crux of the judge's decision is in his twelfth finding:

12. In considering applicant's assertion's [sic] that he is entitled to compensation after September 19, 1990, it is necessary that the undersigned judge focus on the circumstances concerning applicant's termination of employment and the ultimate issue requiring resolution herein is to determine whether, despite applicant's misconduct, his industrial disability caused his loss. In the present case, the undersigned hearing judge having applied the rules set forth in the cases cited hereinabove including a consideration of the cited statutory provisions is satisfied that applicant's employment was properly terminated and that he by his own actions removed himself from gainful employment and placed himself in a position where he then had to compete in the competitive labor market for other employment and that any loss in earnings was not by reason of his industrial injury.

Claimant requested review of the decision, arguing that because the ALJ had indicated at the hearing that he lacked jurisdiction to decide whether the termination was proper, and had rejected evidence on the issue, he should not have made any such finding. Claimant also asserted that he should not have been precluded from testifying about what he regarded as the highly suspicious circumstances surrounding his termination. In any event, he argued, misconduct alone would not disqualify him from compensation.

The ALJ thereafter modified the twelfth finding to read as follows:

12. In considering applicant's assertion's [sic] that he is entitled to compensation after September 19, 1990, it is necessary that the undersigned judge focus on the circumstances concerning applicant's termination of employment and the ultimate issue requiring resolution herein is to determine whether, despite applicant's alleged misconduct, his industrial disability caused his loss. In the present case, the undersigned hearing judge has no jurisdiction to determine whether applicant's employment was properly terminated; however, considering the cited cases, a determination must be made as to whether any loss of earnings was by reason of applicant's industrial injury alone. Applicant's agruments [sic] concerning the propriety or impropriety of his termination must be considered by a Court or other State Agency empowered by law so to do. Considering the evidence in its entirety, applicant's loss in earnings was not by reason of the industrial injury of March 4, 1990.

The remainder of the original order was unchanged.

Claimant filed a petition for special action in the court of appeals, which issued an opinion affirming the ALJ's award. *Cohn v. Industrial Comm'n*, 176 Ariz. 508, 862 P.2d 881 (Ct.App.1993).

### EFFECT OF MISCONDUCT

■ We recently rejected the rationale advanced by the ALJ in his first order, that claimant had "by his own actions removed himself from gainful employment" and, therefore, "that any loss in earnings was not by reason of his industrial injury." *Arizona Dept. of Public Safety v. Industrial Comm'n,*

176 Ariz. 318, 861 P.2d 603 (1993). Even though this language does not appear in the final version of finding number twelve, it is clear that the ALJ continued to focus narrowly on claimant's alleged misconduct and termination. His erroneous conclusion that any loss of earnings had to be "by reason of applicant's industrial injury *alone*" (emphasis added) illustrates the point. In *Arizona DPS,* we said,

> As long as limitations resulting from an industrial injury contribute to a claimant's inability to secure employment at pre-injury wage levels, compensation benefits are payable for loss of earning capacity. If, on the other hand, the injury and its sequelae play no part in the worker's inability to find suitable employment, there is no compensable loss of earning capacity.
>
> Misconduct should be—and is—irrelevant except as it pertains to this causation question. Payment of benefits does not depend on a claimant's good moral character, but is based simply on an injury within the scope of the workers' compensation statutes....
>
> Termination reasons unrelated to the industrial injury, such as layoff, strike, economic conditions, or misconduct become significant only where the evidence demonstrates that they, rather than claimant's disability, caused the subsequent inability to secure work....

176 Ariz. at 322–23, 861 P.2d at 607–08 (citations omitted). The evidence in this case established no such correlation.

Nevertheless, the court of appeals sustained the ALJ's denial of benefits on the separate ground that evidence of Cohn's post-termination job search was insufficient to show a good faith effort to obtain suitable employment. *See, e.g., Arizona DPS,* 176 Ariz. at 322, 861 P.2d at 607. Thus, the court held, claimant failed in his burden of proof. We have searched in vain to determine the origin of this issue. No one addressed it at the commission hearing. Neither the employer nor the carrier raised any objection on this basis. The ALJ did not mention it in either of his orders, and it is not found in the parties' briefs to the court of appeals. In short, there is nothing demonstrating that

the issue of claimant's failure to meet his burden of proof was ever raised, much less considered by the ALJ. It appears for the first time in the court of appeals' opinion.

It is true that Cohn's testimony at the hearing did not specify the precise type of employment included in his job search. He said only that he filled out numerous applications at grocery stores in the area and went to several interviews, but that he was not hired for a period of nine months. No one challenged this testimony. Moreover, if the ALJ found a failure of proof in this regard, or if it played any part in his decision, he certainly did not say so.

■ A reviewing court cannot assume that an ALJ has considered a matter absent explicit findings, *see Post v. Industrial Comm'n,* 160 Ariz. 4, 770 P.2d 308 (1989) (administrative law judge is required to make specific findings on all material issues). unless it can infer that the ALJ necessarily reached the issue. *Pearce Dev. v. Industrial Comm'n,* 147 Ariz. 582, 712 P.2d 429 (1985) (based on judge's stated legal conclusion, factual findings were obvious and could thus be inferred). We cannot make that inference here. As previously noted, the ALJ appears to have focused only on claimant's termination, not on the quality of his subsequent job search.

■ It is well established that issues not presented below should not be considered on appeal. *Industrial Comm'n v. Orizaba Mining Co.,* 61 Ariz. 152, 159, 145 P.2d 850, 853 (1944); *Apache East, Inc. v. Wiegand,* 119 Ariz. 308, 313, 580 P.2d 769, 774 (Ct.App. 1978). It was for the ALJ to first consider and pass upon the sufficiency of claimant's proof regarding his job search, assuming an issue was presented in this regard. We see nothing in the record to suggest that either occurred.

## EVIDENCE REGARDING TERMINATION

■ The ALJ inappropriately prohibited claimant from testifying at the hearing about the circumstances surrounding his termination. As the court of appeals noted, the ALJ's stated belief that he did not have

jurisdiction to decide whether termination was proper indicates that he misunderstood the purpose of the testimony. He evidently did not realize that Cohn was presenting it to rebut any presumption which may have resulted from his post injury employment at the same pay. *See Maness v. Industrial Comm'n*, 102 Ariz. 557, 559, 434 P.2d 643, 645 (1967) ("Post injury earnings may raise a presumption of at least commensurate earning capacity."); *Arizona DPS*, 176 Ariz. at 323, 861 P.2d at 608 (presumption is rebuttable). Claimant was trying to show that Smitty's had rehired him at the same wage to create a false level of post injury earning capacity, and then fired him on flimsy grounds to avoid payment of benefits.

■ As the court of appeals correctly recognized, a claimant is entitled to demonstrate the pretextual nature of a termination. That court nevertheless concluded that the ALJ did not err when he prohibited testimony on this subject because claimant's counsel "did not further educate the administrative law judge on this point nor make an offer of proof...." 176 Ariz. at 511, 862 P.2d at 884. We disagree.

■ Pursuant to Rule 103(a)(2), Ariz. R.Evid.,[2] in order to establish error in the exclusion of evidence, one must first show that its substance was made known to the trial judge. Generally, an offer of proof "is a prerequisite to an appellate argument of admissibility of excluded evidence." *Warfel v. Cheney*, 157 Ariz. 424, 431, 758 P.2d 1326, 1333 (Ct.App.1988) (citing *Montano v. Scottsdale Baptist Hosp., Inc.*, 119 Ariz. 448, 581 P.2d 682 (1978)). The purpose and substance of testimony, however, may be "so obvious as to make an offer of proof superfluous." *Id.* Such is the case here.

■ Cohn's testimony and his counsel's response to the carrier's objection clearly indicated its purpose. Cohn testified that he was the only male cashier and that it was unusual for Smitty's to hire men as cashiers. He also challenged the events leading up to his termination. He indicated that he did not knowingly say anything to the customer

that would upset her. He testified as follows:

Q. [BY CLAIMANT'S COUNSEL]: And tell us the circumstances of why you were terminated.

A. [CLAIMANT]: It was the middle of the week. I had a customer come through my checkout line. I greeted her. She had 10, 11 items, and everything was okay, and she handed me the cash. I put it in the register, and she walked through the checkout line, and the next thing I know, she was up talking to the front-end manager pointing at me, and I wanted to know what I did wrong.

I signed off the cash register. I started to go up front where she was and try to talk to her because she was talking to the manager. She wouldn't even talk to me, and she left through the door. I was out the side door. I followed her, and I asked what was wrong. She wouldn't talk to me.

And I came back in the store, and they called me to the office, and I was suspended.

In response to Smitty's objection, claimant argued that the evidence was relevant to show that his discharge was "possibly ... because of his industrial injury." Counsel for Smitty's replied that while "the only issue is whether this termination is somehow related to his back injury as an excuse for non-payment of benefits," the circumstances of termination were irrelevant. We believe the record was sufficiently clear to make the purpose of the evidence known to the ALJ, and to allow a reviewing court to determine that it was relevant. Rule 103(a)(2), Ariz. R.Evid.; *Horan*, 167 Ariz. at 325, 806 P.2d at 914. It should have been admitted.

We therefore vacate the court of appeals' opinion, set aside the award, and remand the matter for proceedings consistent with this opinion.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.

---

2. The general principle codified in Rule 103(a)(2) applies to industrial commission hearings. *Hor-*

*an v. Industrial Comm'n*, 167 Ariz. 322, 325, 806 P.2d 911, 914 (Ct.App.1991).