IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO D.S.

No. 1 CA-JV 25-0094

FILED 02-26-2026

Appeal from the Superior Court in Maricopa County
No. JD43514
The Honorable Joshua D. Rogers, Judge

**VACATED AND REMANDED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Ingeet P. Pandya
*Counsel for Appellee Arizona Department of Child Safety*

---

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge David B. Gass and Judge Andrew J. Becke joined.

---

**B R O W N,** Judge:

**¶1**    Parents have a "fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005).  But these rights are not absolute, and may be terminated in some circumstances, *id.*, as long as the parents whose rights are to be severed are provided with "fundamentally fair procedures" that satisfy due process requirements, *Santosky v. Kramer*, 455 U.S. 745, 754 (1982).  Such procedures include proper service of court filings affecting a parent's rights.  *See* A.R.S. § 8-535(A).  Without proper service, the juvenile court cannot terminate parental rights.  *See In re Maricopa Cnty. Juv. Action No. JS-5860*, 169 Ariz. 288, 291–92 (App. 1991).

**¶2**    In this appeal, J.B. ("Mother") challenges the juvenile court's order terminating her parental rights to her child, D.S. ("Child"), asserting service of process was improper and thus she was denied due process. Because Arizona Rule of Procedure for the Juvenile Court ("Rule") 303 generally prohibits assigned counsel from accepting service if a parent has not appeared in the proceeding, Ariz. R.P. Juv. Ct. 303(a)(3), and the record does not otherwise show Mother's assigned counsel was authorized to accept service under Rule 303, Mother was not properly served. Accordingly, the juvenile court lacked personal jurisdiction over Mother, and we vacate the termination order as void.

**BACKGROUND**

**¶3**    Child was born in 2013.  Between April 2023 and March 2024, police officers encountered Child several times, unaccompanied in dangerous or vulnerable circumstances.  The Department of Child Safety ("DCS") received a report following another encounter when police found Child panhandling without adult supervision in the middle of the night. DCS had previously petitioned for dependency as to Mother's older child, D.M. ("Sibling").  At the preliminary protective hearing for Sibling, the juvenile court appointed counsel to represent Mother.  Because DCS could not locate Mother, the court later approved service of the dependency

petition by publication. According to the record provided, the same counsel represented Mother in the proceedings related to Sibling from October 2023 through at least June 2025.

**¶4** After receiving notice of the incidents involving Child, DCS tried to contact Mother, but she was unresponsive to several visits to the home as well as numerous phone calls and text messages. Mother did respond to an email, stating she was not in Arizona.

**¶5** In April 2024, DCS filed a dependency petition as to Child and the juvenile court scheduled an initial dependency hearing. In the order setting the hearing, under the heading "Appointment of Counsel – Other Parties," the court assigned the same counsel representing Mother in Sibling's proceedings to represent Mother in this case. The court noted the "determination of appointment of counsel may require the completion of a financial affidavit." Mother did not appear at the hearing, and the court continued the hearing after finding service was incomplete as to Mother. Because DCS could not locate Mother, DCS served Mother with notice of the petition for dependency and related proceedings by publication. A.R.S. § 8-863(A); Ariz. R.P. Juv. Ct. 329(b)(4), (e); Ariz. R. Civ. P. 4.2(f). When Mother failed to appear at the June 2024 publication hearing, the juvenile court found Child dependent.

**¶6** Several months later, in December 2024, DCS moved to place Child in kinship foster care. The juvenile court addressed the motion at a report and review hearing later that month. The court's minute entry shows that counsel assigned to Mother attended; Mother did not. The minute entry also reflects that the court granted the motion over Mother's objection, presumably made by counsel on Mother's behalf.

**¶7** DCS eventually moved to terminate Mother's parental rights to Child on the grounds of abandonment, neglect, and nine months in out-of-home placement. At the initial termination hearing, Mother did not appear. DCS's counsel said he was ready to proceed with termination but noted service of process needed to be addressed. He then explained that if Mother's counsel was not prepared to accept and waive service, then additional time would be needed for publication or personal service. Mother's counsel replied: "They don't need to personally serve the motion for severance on my client because I am her attorney and am still [] her attorney of record, so service is complete upon me." The court then stated that "service is complete upon [M]other, based upon service on her counsel."

**¶8**          A DCS case manager testified briefly about evidence supporting the statutory grounds and Mother's failure to engage with reunification services.  Near the end of the hearing, Mother's counsel told the court she had just received an email from Mother, "asking about the hearing and [] for the information again.  So I don't know if she's trying to call in."  The court replied there were many people in the virtual "waiting room, but none would appear to be [] [M]other.  Did she indicate whether she was having difficulty trying to connect?"  Counsel replied that Mother had not indicated she was having trouble connecting although she did ask if the hearing had ended.  Counsel then sent Mother the link, but she did not join the hearing.

**¶9**          The court determined "[M]other was properly served" through counsel "and had notice of these proceedings," but she "provided no good cause for [her] failure to attend."  Thus, the court found Mother waived her rights and the allegations in the motion for termination were deemed admitted.  The court terminated Mother's parent-child relationship as to Child, finding DCS made diligent efforts to provide reunification services, the evidence supported termination, and its decision was in the child's best interests.  Mother timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21, and -2101(A)(1).

## DISCUSSION

**¶10**          Mother argues the juvenile court lacked personal jurisdiction over her because she was never properly served under Rule 303(a)(3), and by proceeding in her absence, the court violated her due process rights.  DCS asserts that our review here is for fundamental error only.  We disagree.  "Proper, effective service on a defendant is a prerequisite to a court's exercising personal jurisdiction over the defendant."  *Barlage v. Valentine*, 210 Ariz. 270, 272, ¶ 4 (App. 2005).  If service is not proper, the court never acquires jurisdiction over the party, *Angelica R. v. Popko*, 253 Ariz. 84, 89, ¶ 14 (App. 2022), and any resulting judgment is void, *Ariz. Real Est. Inv., Inc. v. Schrader*, 226 Ariz. 128, 129, ¶ 6 (App. 2010); *see also* Ariz. R. Civ. P. 60(b)(4); Ariz. R.P. Juv. Ct. 318(c).

**¶11**          To determine whether Mother was properly served, we must interpret the rules applicable to the termination of parental rights.  In doing so, we apply statutory construction principles.  *Spring v. Bradford*, 243 Ariz. 167, 170, ¶ 12 (2017).  "Under those principles, when a rule is unambiguous, we apply it without further analysis."  *Phillips v. O'Neil*, 243 Ariz. 299, 301, ¶ 8 (2017) (citation modified).  We read rules "in conjunction with each other and harmonize them whenever possible."  *Magee v. Olson*, __ Ariz. __,

__, ¶ 9, 574 P.3d 1189, 1192 (App. 2025) (citation modified). "We review the interpretation of statutes, court rules, and constitutional issues de novo." *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442, ¶ 15 (2018).

**¶12** In 2021, our supreme court adopted a comprehensive restyling and revision of the juvenile court rules. Ariz. Sup. Ct., Order No. R-20-0044. The resulting rules took effect in July 2022 and include procedural clarifications and substantive rule changes. As applicable here, those changes included Rule 303), which governs "assignment" and "appointment" of attorneys, and limits the power of "assigned" counsel to accept service on behalf of a client during dependency, guardianship, and termination proceedings. The rules require the juvenile court to "appoint" counsel in compliance with Rule 303 for preliminary protective hearings, initial dependency hearings, permanency hearings, initial guardianship hearings, and initial termination hearings. *See* Ariz. R.P. Juv. Ct. 332(c)(1), 334(c)(1), 343(d)(3), 345(c)(2), 352(c)(2).

**¶13** Mother points to the interplay of several rules, beginning with Rule 351(d), which requires DCS to serve a parent with a motion for termination of parental rights as provided by Rule 106 no later than ten days before the initial termination hearing. Ariz. R.P. Juv. Ct. 351(d)(1). Rule 106 says that service may be accomplished by serving the attorney of record, but only after service of the case-initiating document by one of several enumerated methods. Ariz. R.P. Juv. Ct. 106(a), (b)(1). And most relevant here:

> The assigned attorney is not attorney of record for purposes of accepting service of process *for a parent who has never appeared in the proceeding* unless the parent, after communication with the assigned attorney, authorizes the attorney in writing to accept service or the attorney avows on the record that the parent expressly authorized the attorney to accept service.

Ariz. R.P. Juv. Ct. 303(a)(3) (emphasis added).

**¶14** Mother argues the juvenile court erred in finding service was complete because DCS's purported service of the motion for termination on her "assigned" counsel does not comply with Rule 303(a)(3). Because the court failed to appoint her counsel until the initial termination hearing, and Mother never appeared, Mother argues her counsel was not authorized to accept service of the termination motion under Rule 303.

¶15 At the initial termination hearing, DCS appropriately raised the issue of service, inquiring whether assigned counsel had contact with Mother and if counsel would accept and waive service. If not, DCS urged the court to set a publication hearing and continue the hearing for about 75 days if "we cannot obtain personal service on Mother." In response, Mother's counsel told the court service was complete because "I am . . . still [] her attorney of record." We presume Mother's counsel believed she was "still" the attorney of record because she was appointed to represent Mother in proceedings related to Sibling.

¶16 Although counsel was "assigned" to represent Mother for Child's proceeding, that counsel was not the "attorney of record" for Mother for purposes of accepting service of process. *See* Ariz. R.P. Juv. Ct. 303(a)(3). The court's minute entry from the initial termination hearing says the court appointed counsel for Mother, but our review of the transcript reveals no such appointment. *Cf. State v. Ovante*, 231 Ariz. 180, 188, ¶ 39 (2013) (explaining that the transcript controls over the minute entry when resolving a discrepancy). Because Mother's counsel was not Mother's attorney of record for purposes of accepting service, she could not accept service of the motion for termination as to Child under Rule 303(a)(3) unless she had express authorization from Mother, or she avowed on the record that Mother authorized her to accept service. The record does not reflect express authorization and Mother's counsel made no such avowal. Thus, Mother was not properly served.

¶17 This court's opinion in *Maricopa County Juvenile Action No. JS-5860*, 169 Ariz. 288 (App. 1991), supports our analysis. In that case, the Arizona Department of Economic Security ("ADES") personally served the mother with a petition for termination as to the mother's youngest child. *Id.* at 289. The mother did not appear at the termination hearing, and the juvenile court continued the hearing and appointed counsel and a guardian ad litem for the mother. *Id.* at 290. Later, the court permitted ADES to file an amended petition seeking termination of parental rights as to the mother's two older children as well. *Id.* ADES served the amended petition only on the mother's guardian ad litem and appointed counsel. *Id.* This court later affirmed the superior court's order setting aside the termination order as to the two older children, concluding the order was void based on lack of service. *Id.* at 291. This court reasoned that the amended pleading constituted a new or additional claim because "proof of additional facts [was] required," and because ADES sought "a more onerous judgment than prayed for in the original pleading" by terminating the mother's rights to additional children. *Id.* (citation modified). Thus, this court concluded:

> [T]he amended petition required proof of additional facts relating to the existence, paternity, and parental treatment of the two older children and that the amended prayer sought a judgment more onerous than prayed for in the original petition. We therefore hold that the amendment to the pleadings seeking severance of the two additional children constituted two new claims or causes of action and not merely the addition of supplemental issues to an existing cause of action. Proper service upon the mother was required to give the trial court jurisdiction to hear these new claims.

*Id.*

¶**18** Similarly, Mother was served by publication in the proceedings as to Sibling. The juvenile court *appointed* counsel to represent Mother. DCS then petitioned for dependency to add Child to the proceedings and served Mother with the petition by publication, given that DCS was unable to personally serve her. The court *assigned* counsel for Mother at the initial dependency proceeding, and as far as the record reveals, the same counsel was present at each subsequent dependency proceeding. Mother, however, never appeared in the dependency of Child or attended any hearings. Like the parent in *JS-5860*, 169 Ariz. at 291, proper service of Mother was necessary before the juvenile court could proceed with termination of Mother's parental rights.

¶**19** DCS contends that Mother made a general appearance because her counsel objected to DCS's motion to change Child's physical custody to another family member at a report and review hearing. *See Kline v. Kline*, 221 Ariz. 564, 569, ¶ 18 (App. 2009) ("A party has made a general appearance when he has taken any action, other than objecting to personal jurisdiction, that recognizes the case is pending in court."); *see also Montano v. Scottsdale Baptist Hosp., Inc.*, 119 Ariz. 448, 452 (1978) ("[A] general appearance by a party who has not been properly served has exactly the same effect as a proper, timely and valid service of process."); Ariz. R.P. Juv. Ct. 329(b) (explaining that service in the juvenile court is governed by Arizona Rules of Civil Procedure 4, 4.1, and 4.2); Ariz. R. Civ. P. 4(f)(3)–(4) (detailing acceptance and waiver of service by appearing in court).

¶**20** We are not persuaded that Mother made a general appearance, implicitly waiving service of process, merely because her *assigned* counsel, who was not yet the attorney of record for proceedings related to Child, raised an objection at a hearing where Mother was not present and had never been served with the motion for termination. *See*

*Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, 260, ¶ 15 (App. 2003) ("The waiver of constitutional rights is not easily presumed."); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000) (holding that parents have a fundamental liberty interest in "the care, custody, and control of their children" under the Fourteenth Amendment); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." (citation omitted)). Also, finding waiver here would require us to ignore the plain language of Rule 303(a)(3), which specifically describes the limited circumstances when assigned counsel may accept service. *See Ariz. Dep't of Revenue v. Action Marine, Inc.*, 218 Ariz. 141, 143, ¶ 10 (2008) ("We . . . avoid interpretations that render statutory provisions meaningless.").

**¶21** Finally, we recognize that Mother contacted her assigned counsel near the end of the initial termination hearing. Although provided with instructions for how to join the hearing virtually, Mother did not call in to the hearing. While it appears Mother had actual notice of that hearing, nothing in the record shows she was properly served with the motion for termination of her parental rights to Child. And even if she had received notice, actual notice does not mean we overlook lack of service. *See Melton v. Superior Court (Melton)*, 154 Ariz. 40, 42 (App. 1987) (explaining that actual notice does not validate improper service); *Endischee v. Endischee*, 141 Ariz. 77, 79 (App. 1984) (rejecting argument that "*any* manner of purported service will suffice so long as it gives the party actual knowledge of the pendency of the action").

## CONCLUSION

**¶22** Because the juvenile court's order is void for lack of personal jurisdiction over Mother relating to the motion for termination of parental rights as to Child, we vacate the order. Thus, we do not address Mother's alternative argument that she received ineffective assistance of counsel.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR