629 P.2d 1015

Maria CLEATOR, Petitioner-Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Hobo Joe's #795, Respondent-Employer,

Mission Insurance Company, Respondent-Carrier.

1 CA–IC 2340.

Court of Appeals of Arizona, Division 1, Department C.

April 14, 1981.

Rehearing Denied June 2, 1981.

Review Denied June 23, 1981.

Law Offices of Dale D. Tretschok by Dale D. Tretschok, Tucson, for petitioner-employee.

Calvin Harris, Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Everett, Bury & Moeller by J. Michael Moeller, Marshall Humphrey, III, Tucson, for respondents Employer and Carrier.

## OPINION

WREN, Chief Judge.

In this special action review of an Industrial Commission award, petitioner challenges the administrative law judge's award that she was stationary with a 30 percent permanent scheduled disability. It is her contention that she is entitled to a program of vocational rehabilitation as a part of *active* medical treatment.

At the time of the injury to her knee on April 24, 1976, petitioner was employed at Hobo Joe's as a waitress, an occupation she had pursued for some six years prior to the injury. She was treated by Dr. Hugh Thompson, III who thereafter performed two surgeries on her knee; one on September 27, 1976 and one on November 25, 1976. Dr. Thompson later determined that her condition was stationary with a 30 percent disability and, although he indicated she was able to return to work, he did not feel that she should return to her regular work as a waitress, since she was unable to stoop, engage in long standing, and that she should not carry anything over 15 pounds. This conclusion as to her disability and work limitations was also shared by Dr. Warren Eddy.

Conceding that her knee condition, so far as physical therapy and surgery were concerned, was "stationary", it is nevertheless petitioner's contention that, since she cannot return to her regular employment as a waitress, medical treatment does not end with those kinds of procedures and that she should receive vocational rehabilitation to improve her earning capacity. Her argument in this regard is as follows:

It is important from the outset to realize that Petitioner is asking for "compensation" during her rehabilitation because, of course, the cost of rehabilitation in regard to the cost of the program itself could be paid by the A.R.S. § 23–1065, A–1 "Special Fund" or even under A.R.S. §§ 23–501, et seq., which provide for funds for rehabilitation. Neither of these statutes directed toward "rehabilitation" provide for payment for living expenses while engaged in the "rehabilitation" program. If Petitioner should be successful, she will request that the carrier continue her on the second stage of compensation (temporary partial) while she engages in a program of rehabilitation, the actual cost of which could be paid either by the "Special Fund" or the Department of Economic Security under § 23–501 but the cost of what you might say would be "supporting" the Petitioner throughout this period would be on the Respondent, Mission. Just paying for the cost of a rehabilitation program without providing adequate living expenses obviously renders any "rehabilitation" program worthless and all Petitioner is seeking is to keep her regular partial temporary compensation checks coming long enough to complete her rehabilitation.

She then points to the following testimony of Dr. Stuart Holtzman, board certified in the field of physical medicine and rehabilitation, as supportive of her argument:

Q. Allright. Now Doctor, what would your recommendation be at this time in regard to future care, if any, of Mrs. Cleator after your surveil of that report and based upon your own analysis and investigation?

A. I would recommend that we proceed with her training and placement into such a vocation, monitoring her medically to make sure that she can physically and psychologically handle what we predict that she can physically and psychologically handle.

Q. Would that, in your opinion, be further medical care, and if so, why would you call it "medical care"?

A. This is what I do. I'm a physician, medical doctor. This is how I take care of patients at Rehabilitation Medicine. And, I believe this is what this person needs. And so I think that I am—This is the way I would take care of her. That is what medical care is.

\*     \*     \*     \*     \*     \*

Q. Allright. And Doctor, based on your testimony, would it be fair to say, if I define stationary in Arizona as being when an injured worker's condition ceases to improve that, could you tell me whether or not you believe Mrs. Cleator's condition is stationary, or does she need further medical care or treatment?

A. I think that her—that this person is not yet where she should be. I think she will improve. R.T. at pages 58–59.

The administrative law judge rejected this argument by finding:

It is not felt that it was the intent of the legislature nor has it been the interpretation of the court that medical treatment or medical benefits include vocational rehabilitation.

We agree with this determination of the hearing judge. Under well established law, "stationary" refers to that time when the physical condition of the employee resulting from the industrial injury has reached a relatively stable status so that nothing further in the way of medical treatment is indicated to improve that condition. *Janis v. Industrial Commission*, 27 Ariz.App. 263, 553 P.2d 1248 (1976). In this regard it is to be noted that Dr. Holtzman testified that he agreed with Dr. Thompson's and Dr. Eddy's findings that from a medical, surgical standpoint the petitioner's knee was in a stationary condition.

The Arizona Workmen's Compensation Act does not contemplate the restoration of the workman to his maximum functioning ability. The fact that vocational rehabilitation may improve the claimant's opportunities to find another job does not mean that the claimant's physical condition is not "stationary". The term "stationary" refers to the physical condition of the applicant, not the inability to acquire a better or different job.

The Industrial Commission has fulfilled its responsibility of "physical restoration" in this case. The claimant's knee is stationary and the Commission has awarded benefits for a scheduled disability. The Arizona legislature has not provided for payment of living expenses while a claimant obtains vocational rehabilitation. Petitioner has presented her argument to the wrong forum.

Award affirmed.

O'CONNOR, P.J., and FROEB, J., concur.