764 P.2d 341

**ARDEN–MAYFAIR; and Fremont Indemnity Company, Petitioners,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Wesley Tucker, Respondent Employee.**

**No. 2 CA–IC 88–0006.**

Court of Appeals of Arizona, Division 2, Department A.

June 30, 1988.

As Amended July 12, 1988.

Petition for Review Dismissed Sept. 26, 1988.*

---

**1.** See *Mother Tucker's Food Experience v. Industrial Commission of Arizona*, 142 Ariz. 496, 690 P.2d 797 (App.1984).

* Gordon, C.J., of the Supreme Court, did not participate in the determination of this matter.

Jones, Skelton & Hochuli by Calvin Harris and Melinda K. Kelley, Phoenix, for petitioners.

Catherine A. Fuller, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Tretschok, McNamara & Clymer, P.C. by Patrick R. McNamara, Tucson, for respondent employee.

## OPINION

HOWARD, Presiding Judge.

This is a special action review of an award by the Industrial Commission awarding the respondent employee, Wesley Tucker, a 56.18 percent reduction in earning capacity.

On November 20, 1983, Tucker filed a claim for worker's compensation benefits for an industrial injury sustained while he was employed by petitioner Arden–Mayfair as a meat cutter.

His claim for benefits was deemed compensable and on October 22, 1986, the petitioner-insurance carrier closed the claim with a permanent disability effective August 22, 1986. On December 3, the Industrial Commission issued its findings and award for unscheduled permanent partial disability finding Tucker had sustained a 56.18% reduction in his earning capacity which entitled him to an award of $409.41 per month. This award was based on his ability to perform the duties of a sales clerk or cashier, or comparable work and earn an average monthly sum of $580.62 at the time of his injury. Both petitioners and repondent protested this award and hearings were held.

Tucker testified that, at the time of the hearing, he was doing part-time mainte-

nance work for a townhouse complex. His job consisted of painting and relettering street signs. He is also engaged in a full-time program through the Pima County Vocational Rehabilitation Department, studying to become a paralegal. He testified that he had looked for other jobs but had been unable to find any.

Two doctors testified about Tucker's physical condition. Dr. Charles Payne testified that he has degenerative changes in his right shoulder from his former employment as a meat cutter. He stated that Tucker can perform jobs that do not require him to use his right shoulder in a repetitive nature involving lifting or moving weight. Dr. Payne said that Tucker can perform sedentary work as follows: lifting 10 pounds maximum; occasionally lifting such articles as a socket wrench or a small tool; sitting, walking, and standing as necessary to carry out his job duties.

Dr. Roger Terry Grimes testified that Tucker's condition is stationary with a permanent impairment. He placed the following restrictions on physical activity: 1) lifting no more than 60–70 pounds on a repetitive basis; 2) lifting no more than 100 pounds on an occasional basis; 3) lifting no more than 10 pounds using his right shoulder or right upper extremity on a repetitive basis; and 4) lifting no more than 20 pounds on a repetitive basis with no lifting overhead. Dr. Grimes further testified that Tucker is capable of working eight hours a day, 40 hours a week with these limitations.

Two labor market consultants testified. Christina May, the employer's labor market consultant, conducted a labor market survey. She testified that a valet parking lot attendant job with Arizona Medical Center is suitable for Tucker. This job requires the attendant to drive cars from the entrance of Arizona Medical Center to its parking lot and then return the owner's keys to him at the front door. May testified that there is literally no lifting requirement for this job. She also testified that this position is readily available. She stated that there were six openings in April 1987, (three months prior to the hearing)

and approximately 15 applicants for these openings. She calculated that Tucker would earn $4.48 per hour, with a monthly earning capacity of $771.81 for full-time employment.

She also considered Tucker qualified for a position at Central Alarm. This job would require him to monitor security alarms. She testified that she spoken with the supervisor at Central Alarm and he said that Tucker is suitable and qualified for this type of work. She further testified that this job is reasonably available. She said that a week before the hearing in this case Central Alarm had two openings for which they had received 10 applications and interviewed five candidates. She testified that Tucker would earn $3.75 per hour with Central Alarm with a monthly earning capacity of $693.26 for full-time employment.

Jeffrey Wesley, a labor market consultant testified for Tucker that it was his opinion that Tucker's earning capacity, at the time of the hearing was evidenced by what he was doing then, to-wit, attending school and working approximately 20 hours per week. Wesley stated this gave him an earning capacity of $563.29 per month based on $6.05 per hour. Wesley stated that this entitled Tucker to a loss of earning capacity award of $418.94. Wesley explained that because Tucker is engaged in a vocational rehabilitation program, he is doing what is reasonable and appropriate under the circumstances. Thus, Wesley considers Tucker's current employment the best representation of his earning capacity.

Wesley also investigated the jobs identified by May. He agreed with May that the parking lot attendant position at Arizona Medical Center is within the restrictions set forth by Dr. Grimes and is appropriate for Tucker. He further agreed that there were 15 applicants for six openings for this position at the time of the hearing. He also testified that May's wage figure of $5 per hour for this job was correct. He said that he had spoken with an Arizona Medical Center representative who said that the parking lot position is sedentary-type work, but there is a possibility that the attendant might occasionally have to assist a person

in a wheel chair. Wesley interpreted this to mean that Tucker might be required to lift a patient in a wheel chair with assistance.

Wesley also agreed with May that the alarm monitoring job at Central Alarm is suitable for Tucker. Moreover, Wesley testified that Central Alarm told him that openings were "always available." He said that they advertise through the newspapers and get applicants on a walk-in basis. He stated that they have two or three qualified applicants for each position.

The presiding administrative law judge found that the testimony of May and Wesley was in direct conflict and resolved the conflict by adopting the testimony of Wesley as being more probably correct and well founded. Thus, the administrative law judge awarded the respondent employee $418.94 per month based upon his part-time wages at the time of the hearing.

Petitioners present the following issues for review: (1) Did the administrative law judge err by basing the employee's earning capacity on part-time wages he was earning while attending school when the uncontroverted testimony of his orthopedic surgeon established that he was capable of working full-time? (2) Did the administrative law judge err by failing to consider the positions of parking lot attendant and alarm monitor in determining the employee's earning capacity when both labor market consultants agreed that these positions were suitable and reasonably available?

■ Once a claimant has shown reasonable efforts to secure suitable employment in the area of his residence, the burden shifts to the opposing party to show the availability of such employment. Here, the respondent employee said that he had made numerous job applications and had been interviewed, but had been unsuccessful finding any job other than the part-time job in which he is presently engaged. There was no indication that he refused to apply for any other maintenance jobs, or that when he made his job applications, he conditioned his employment on a part-time availability. We believe this was sufficient to place the burden of showing the avail-

ability of other employment on the petitioners.

While the administrative law judge found there was a conflict in the evidence between May and Wesley, the record shows that the only real conflict was the effect of Tucker's going to school. There was really no conflict about the suitability or availability of the job at Central Alarm or the job as parking lot valet.

Wesley's position, and the position adopted by the trial court can best be described by the following excerpts from his testimony:

"Q. Mr. Wesley, even though these are essentially part-time jobs, why is it your opinion that this best currently represents his earning capacity?

A. Well, as a professional rehabilitation counselor, I can see that Mr. Tucker is engaged in a vocational and rehabilitation retraining program on his own with the assistance of the Division of Vocational Rehabilitation; and by that process, attempting to restore as much of the lost earning capacity as possible.

So, since that is a more than reasonable thing to do under the circumstances, and the most appropriate and proper thing to do, then I strongly believe that current employment while he is going to school, that represents his current best earning capacity."

■ "[T]he purpose of worker's compensation is to reimburse injured workers for loss of earning capacity, not loss of earnings." *Franco v. Industrial Commission of Arizona*, 130 Ariz. 37, 40, 633 P.2d 446, 449 (App.1981). Thus, earning capacity is shown by competent evidence that there is "employment reasonably available which the claimant could reasonably be expected to perform, considering his physical capabilities, education and training...." *Germany v. Industrial Commission*, 20 Ariz. App. 576, 580, 514 P.2d 747, 751 (1973).

■ In the present case the uncontradicted evidence was that Tucker was physically capable of working full-time. Wesley's evidence as to loss of earning capacity was incompetent and should not have been

considered by the administrative law judge because Wesley based his opinion on loss of earnings rather than loss of earning capacity. The respondent employee is clearly capable of working full-time and the employer cannot be held responsible for paying for his schooling. See *Cleator v. Industrial Commission of Arizona*, 129 Ariz. 179, 629 P.2d 1015 (App.1981); and see *Tamecki v. Johns–Manville*, 125 N.J. Super 355, 311 A.2d 20 (App.Div.1973), cert. denied, 64 N.J. 495, 317 A.2d 707 (1974); *Harbatuk v. S. & S. Furniture Systems Insulation*, 211 N.J.Super 614, 512 A.2d 537 (App.Div.1986).

■ Did the employer and his insurance carrier bear their burden to show that there was no loss of earning capacity? It was their burden to show by substantial evidence that there is employment reasonably available which the claimant could reasonably be expected to perform, considering his physical capability, education and training. *Germany v. Industrial Commission*, supra. In meeting the two-pronged test of *Germany*, there is "substantial evidence when (1) the job requirements (of the suggested job upon which the award is calculated) are related to the claimant's disability, education and training with specificity and (2) the reasonable availability of the job upon which the award is calculated is demonstrated with at least express reference to the impaired worker's disability to compete for that job and the likelihood that the potential employer will hire somebody with a previous disability." *Roach v. Industrial Commission of Arizona*, 137 Ariz. 510, 512, 672 P.2d 175, 177 (1983); *Dean v. Industrial Commission*, 113 Ariz. 285, 551 P.2d 554 (1976). The employer and carrier in the present case did not show that the respondent employee would have had an equal opportunity to be hired in competition with others. May never asked the prospective employers whether or not they would refuse to hire the respondent because of his previous industrial injury. The result here is that we have an award based on incompetent evidence and a failure on the part of the employer/carrier to sustain the burden of proof.

■ The employee contends that we should not vacate the award because of the administrative law judge's reliance on incompetent evidence, but rather we should affirm because of the failure of the employer to sustain its burden of proof, and because of the presumption that post-injury earnings represent earning capacity. We do not agree. While the fact of post-injury earnings may raise a presumption of commensurate earning capacity, see *White v. Industrial Commission*, 82 Ariz. 120, 309 P.2d 250 (1957); *Laramore v. Industrial Commission*, 82 Ariz. 100, 309 P.2d 237 (1957), this presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. *White v. Industrial Commission*, supra. When determining reduced monthly earning capacity in a case such as this, post-injury earnings are not the only factor to be considered. *Allen v. Industrial Commission*, 87 Ariz. 56, 347 P.2d 710 (1959). The extent of the employee's physical disability and the type of work the employee is able to perform is also to be considered. *Allen v. Industrial Commission*, supra; A.R.S. § 23–1044(D). Fairness to all parties requires that this case be remanded.

That part of the award granting supportive medical maintenance benefits as described by Dr. Grimes, is affirmed. The award of compensation for unscheduled permanent partial disability benefits is vacated and the case is remanded.

LACAGNINA, C.J., and HATHAWAY, J., concur.