781 P.2d 586

**Frank ROBERTS, Petitioner Employee,**

**v.**

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Coconino County Board of Supervisors, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. CV–88–0298–PR.**

Supreme Court of Arizona, In Banc.

Aug. 3, 1989.

Van Baalen Law Offices by Peter T. Van Baalen, Phoenix, for petitioner Employee.

Catherine A. Fuller, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Christopher E. Kamper, Chief Counsel, State Compensation Fund, Phoenix, for respondent Employer/Carrier.

CAMERON, Justice.

## I. JURISDICTION

Claimant, Frank Roberts, injured his back in an industrial accident. An administrative law judge found claimant's loss of earning capacity to be 75.89 percent. Claimant appealed and the court of appeals affirmed. Claimant petitioned this court for review challenging the sufficiency of the evidence supporting the award. We have jurisdiction pursuant to Ariz. Const.

art. 6, § 5(3), A.R.S. § 12–120.24 and Ariz. R.Civ.App.P. 23, 17B A.R.S.

## II. ISSUE

Does the evidence reasonably support the administrative law judge's finding that work as a cashier or sales clerk was suitable and reasonably available to the claimant?

## III. FACTS

In 1975, claimant, Frank Roberts, injured his back when his foreman threw a fire-cracker at him. It is not questioned that this was a work connected injury. Since that time, claimant has had three back surgeries. In 1979, the Industrial Commission determined that claimant sustained a 51.79 percent loss of earning capacity.

On 24 February 1982, claimant petitioned the Industrial Commission to re-open his claim. The claim was ultimately re-opened and claimant was placed on temporary disability status until 4 December 1985. On 16 April 1986, the Industrial Commission issued its findings, concluding that claimant had sustained no greater loss of earning capacity than had been awarded in 1979. Claimant protested and a hearing was held.

At the hearing, Irwin Shapiro, M.D., testified that claimant could not do any physical labor, prolonged driving, or climbing. Claimant could lift up to twenty-five pounds, but only five to ten pounds repeatedly. Dr. Shapiro further testified that claimant should not bend or squat repeatedly. Also, claimant could sit for no more than one hour and stand for no more than forty-five minutes. Dr. Shapiro testified that he felt claimant could work for six hours a day, five days a week.

Fred Brick, a labor market consultant employed by the State Compensation Fund, testified that claimant, with his disabilities, was employable part time as a sales clerk or cashier. Brick's research included contacting the Job Service Division in Flagstaff, and the Division of Vocational Rehabilitation in Flagstaff, as well as looking through the want ads in a Flagstaff news-paper. Brick testified that during a six-week period the newspaper advertised 28 openings for part-time sales clerks and 14 openings for cashiers. Brick testified that these numbers were typical for the Flag-staff area. Brick also stated that there was a high rate of employee turnover for cashier and sales clerk positions and conse-quently these types of jobs were constantly available.

Brick specifically discussed four busi-nesses with available jobs: Broughton's Hallmark Cards, Glenn's Union 76, The Knife Shop and Country Furnishings. Brick testified that he contacted employers at each of these four shops. Brick told each employer of claimant's physical limita-tions and asked each employer if he or she would consider hiring claimant. Each em-ployer answered that he or she would con-sider hiring claimant. Brick also testified that he believed claimant would have a reasonable opportunity of obtaining em-ployment as a sales clerk or cashier.

Brick stated that he did not ask any of these four employers whether he or she would hire a man with claimant's disabili-ties who was in competition with a fully able-bodied applicant. Nor did the respon-dent carrier present any evidence of the number of applicants for any of these four positions.

Claimant testified that before the acci-dent he had been a truck driver for Coconi-no County. Because of his back injuries, claimant could no longer work as a truck driver. Claimant testified that he had tried to obtain employment, but was unsuccess-ful.

Claimant testified that he applied at Broughton's Hallmark Cards but the job was already taken. The evidence showed that the position at Glenn's Union 76 was for 40 hours per week and therefore was not suitable for claimant. Claimant also testified that he went to The Knife Shop and the manager told him that she had no positions available at that time and that the salespersons were required to do a lot of bending. Claimant also went to Country

Kitchens[1] and the available job was for delivering kitchen cabinets and required lifting over 100 pounds.

The administrative law judge found that claimant could work 20 hours per week as a cashier or sales clerk making minimum wage and had a loss of earning capacity of 75.89 percent.

The court of appeals affirmed this award. Claimant petitioned this court for review claiming that the evidence is insufficient to support the award. We granted the petition for review because we agree with the claimant.

## IV. DISCUSSION

On review of an Industrial Commission award, we must view the evidence in the light most favorable to sustaining the Industrial Commission's findings and award. *Franco v. Industrial Comm'n*, 130 Ariz. 37, 39, 633 P.2d 446, 448 (App.1981). We will not set aside the award if it is based upon any reasonable interpretation of the evidence. *Id.* However, an award will not be upheld if it is not based upon competent or substantial evidence. *Macias v. Industrial Comm'n*, 139 Ariz. 182, 184, 677 P.2d 1290, 1292 (1984).

In determining loss of earning capacity the goal is to "determine as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much." *Davis v. Industrial Comm'n*, 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957).

■ At a hearing to determine loss of earning capacity, the burden of proof is initially upon the claimant to demonstrate that he or she has made a reasonable effort to secure employment. *Employers Mut. Liab. Ins. Co. v. Industrial Comm'n*, 25 Ariz.App. 117, 119, 541 P.2d 580, 582 (1975). In this case, claimant testified that he had tried to obtain work but was unsuccessful.

Because claimant satisfied his burden of proof, the burden shifted to the carrier to prove that suitable employment is available. *Id.* To meet this burden, the carrier must prove that "there is employment reasonably available which the claimant could reasonably be expected to perform, considering his physical capabilities, education and training...." *Germany v. Industrial Comm'n*, 20 Ariz.App. 576, 580, 514 P.2d 747, 751 (1973). Claimant asserts that the carrier did not meet this burden because the carrier offered no evidence as to the competition for the available positions. Claimant argues that no evidence was given of the number of applicants for each available position or of claimant's ability to compete for any of the existing jobs.

■ We recognize that the test set forth in *Germany* merely requires the carrier to present evidence that employment is reasonably available. However, since *Germany*, we have continued to set forth what evidence is necessary to prove that employment is "reasonably available." In *Dean v. Industrial Comm'n*, 113 Ariz. 285, 551 P.2d 554 (1976), we held that to prove with reasonable certainty that a claimant could secure a job, the evidence must "include, but is not limited to, the competition for available positions, ... and the likelihood that employers will hire someone with a previous disability...." *Id.* at 287, 551 P.2d at 556.

In *Zimmerman v. Industrial Comm'n*, 137 Ariz. 578, 672 P.2d 922 (1983), we set aside a loss of earning capacity award because the evidence did not support the Commission's finding that suitable employment was reasonably available to the claimant. We stated:

[D]etermination of the injured worker's ability to sell his services in a competitive, open market requires specific evidence—not abstractions or assumptions—regarding the number of positions available, the competition for those posi-

---

1. The record is not clear as to whether Country Furnishings and Country Kitchens are the same establishment. Claimant contends that when he inquired about a job, Country Furnishings was no longer in business and Country Kitchens was located in the place Country Furnishings had previously occupied. Claimant also testified that he could not find any establishment called Country Furnishings in the Flagstaff area.

tions, the regularity and permanency of the positions, and, "possibly most importantly," the likelihood of the prospective employer giving the injured applicant as much consideration as those who are not handicapped or who have not experienced industrial injury.

137 Ariz. at 584, 672 P.2d at 678.

The court of appeals distinguished *Zimmerman* from the present case based on the fact that *Zimmerman* involved an odd-lot claimant or one " 'who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist....' " 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 57.51, at 10–164.66 (1987) (quoting *Lee v. Minneapolis St. Ry. Co.*, 230 Minn. 315, 320, 41 N.W.2d 433, 436 (1950)). However, in *Roach v. Industrial Comm'n*, 137 Ariz. 510, 672 P.2d 175 (1983), which did not involve an odd-lot claimant, we also held that evidence of both the number of openings and the number of applicants was required to prove that suitable employment was reasonably available.

In determining the "reasonable availability" of employment in loss of earning capacity cases, Arizona has long adhered to a "competitive labor market" model. *Davis v. Industrial Commission*, 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957). Such a model requires that both supply and demand be considered. The mere fact that "X" number of openings exist satisfies but one of the elements in the supply and demand equation. The need for evidence regarding competition for the available positions was explicitly settled in *Dean*, 113 Ariz. at 287, 551 P.2d at 556.

*Roach*, 137 Ariz. at 514, 672 P.2d at 179.

The court of appeals also distinguished *Zimmerman* from this case because in *Zimmerman* the expert labor consultants could only find one job suitable for the claimant whereas in this case the expert witness found approximately 42 positions and testified that there was a high turnover rate in these types of "entry level"

jobs. The court of appeals, in distinguishing *Zimmerman* from this case, stated, "evidence of competition becomes critical where the number of jobs available is comparatively small." *Roberts v. Industrial Comm'n*, No. 1 CA–IC 3739, memo. dec. at 10 (Ariz.Ct.App. May 19, 1988). However, again, this is not consistent with *Roach*. In *Roach*, the evidence showed that there were 471 openings during a one-year period. Nevertheless, we held that the evidence of the number of openings, without any evidence of the number of applicants or the willingness of the employers to hire someone with a previous disability, was insufficient to sustain the award. *Roach*, 137 Ariz. 512–514, 672 P.2d at 177–79 (the findings of the Industrial Commission are deemed to be based on substantial evidence when "the reasonable availability of the job upon which the award is calculated is demonstrated with at least express reference to the impaired worker's ability to compete for that job and the likelihood that the potential employer will hire someone with a previous disability").

In *Roach*, we noted that Judge Jacobson's concurring opinion in *Dye v. Industrial Comm'n*, 23 Ariz.App. 68, 530 P.2d 914 (1975), "perceptively exposed" the flaw in basing job availability on the number of job openings. *Roach*, 137 Ariz. at 513–14, 672 P.2d at 178–79. Judge Jacobson stated in his concurrence:

> [T]estimony that " 'X' number of jobs as a dishwasher are available in the Phoenix area a month" is meaningless unless there is some indication as to the number of individuals seeking that employment. If there are 50 openings for a dishwasher which are drawing 5,000 applicants, it cannot be said that one chance in a hundred makes the job "reasonably available."

*Dye*, 23 Ariz.App. at 72, 530 P.2d at 918 (Jacobson, J., concurring), *quoted with approval in Roach*, 137 Ariz. at 514, 672 P.2d at 179.

Finally, in *Macias v. Industrial Comm'n*, 139 Ariz. 182, 677 P.2d 1290 (1984), we set aside an award for loss of earning capacity because "[t]here was no

evidence tending to show that petitioner could reasonably be expected to *compete* for and secure employment...." *Id.* at 184, 677 P.2d at 1292 (emphasis added).

In this case, no evidence was presented indicating the number of applicants for any of the jobs discussed at the hearing. Nor was sufficient evidence presented concerning the willingness of the employers to hire someone with a previous disability. The evidence does not reasonably support the award.

## V. DISPOSITION

The court of appeals' opinion is vacated and the award is set aside.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ., concur.