291 P.3d 365

Janelle KWIETKAUSKI, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Sentry Insurance, Respondent Employer,

Sentry Insurance, Respondent Carrier.

No. 1 CA–IC 12–0004.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 20, 2012.

Janelle Kwietkauski, Phoenix, Petitioner Employee.

Klein, Doherty, Lundmark, Barberich & LaMont, P.C. By Lisa M. LaMont, Phoenix, Attorneys for Respondent Employer/Carrier.

Andrew Wade, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

## OPINION

GEMMILL, Judge.

¶1 May a workers' compensation insurance carrier suspend a claimant employee's benefits under Arizona Revised Statutes ("A.R.S.") section 23–1026(C) (2012) [1] for obstructing an independent medical examination ("IME") because the claimant asserted, at the start of the IME, an intention to tape record the examination? We conclude as a matter of law that a workers' compensation claimant who expresses an intention to record an IME, in the absence of any prior communication about recording, has not committed a "wrongful act" constituting obstruction of the IME under A.R.S. § 23–1026(C).

¶2 Janelle Kwietkauski seeks special action review of an Industrial Commission of

Arizona ("ICA") decision affirming a suspension of her benefits, the termination of her benefits, and the denial of her complaint against Sentry Insurance ("Sentry") for bad faith and unfair claims processing. For the reasons that follow, we set aside the award.

## FACTS AND PROCEDURAL HISTORY

¶3 Kwietkauski began work as a workers' compensation claims adjustor for Sentry in 2007. On August 18, 2010, Kwietkauski slipped in the parking lot on her way into the office, falling backwards onto her right buttock, hip and hand, causing pain in her low back and right hip, wrist, and palm. Kwietkauski reported the incident to her supervisor and completed her shift.[2]

¶4 After accepting Kwietkauski's claim, Sentry scheduled Kwietkauski for IMEs in January and February 2011. After Kwietkauski missed two IMEs due to illness, Sentry rescheduled the IMEs on March 8 with Dr. Terry McLean and March 17 with Dr. Neal Rockowitz. Kwietkauski appeared at Dr. McLean's office for the March 8 appointment. Dr. McLean, however, declined to complete the examination because, as he explained in his report to Sentry:

> [u]pon entering the examination room, the claimant had pulled out a tape recorder with tape recorder instruction. I explained to her that it is my policy that I do not allow a tape recording of the Independent Medical Examination. She reported that it was her right that she can have a tape recorder. I explained [to] her that is indeed her right in the state of Arizona, but it is my policy that I do not have to perform the Independent Medical Examination. She then requested something in writing from me to her stating that I do not allow this. I explained to her that I have nothing in writing except the instructions to the insurance company that request[ed] the IME that we do not allow tape recording.

---

1. We cite the current versions of statutes when no material revisions have occurred since the events in question.

2. While at work the next day, Kwietkauski fell from her chair, landing on her buttocks. She felt "additional pain" in her buttocks and lower back from the fall. The second incident was processed under the August 18, 2010 date of injury.

The claimant stated that this sounds "fishy" and wanted time to think about it. The claimant decided that she wanted to proceed with the Independent Medical Examination.

After the conversation I had with this claimant, I did not feel comfortable in performing an Independent Medical Examination. Thus, the claimant left my office.

On April 28, 2011, Sentry notified Kwietkauski that her benefits were suspended because she had obstructed the IME. Kwietkauski requested a hearing, claiming Dr. McLean had refused to conduct the IME and Sentry was committing bad faith in the processing of her claim. The ICA treated Kwietkauski's request as a complaint of bad faith or unfair claim processing practices, and in June 2011, the ICA denied Kwietkauski's bad faith complaint.

¶ 5 Kwietkauski attended and participated in the March 17 IME with Dr. Rockowitz, regarding her hip. Dr. Rockowitz found that she had "reached maximum medical improvement" and had no impairment, work restriction, or need for supportive care. In June 2011, Sentry closed Kwietkauski's file after the expiration of a 20–day closure letter dated May 20, 2011. In July 2011, Kwietkauski requested another hearing to contest the termination of her benefits.

¶ 6 Kwietkauski's hearing requests were consolidated, and hearings were conducted in September and October. The administrative law judge ("ALJ") issued a decision on December 2, 2011, affirming the suspension of Kwietkauski's benefits:

> On due consideration, I determine and conclude that Kwietkauski's actions, in asserting her intent to tape record the IME on March 8, 2011 with Dr. McLean regarding her lumbar spine condition, but without providing reasonable advance notice, constituted a wrongful act which obstructed the examination. The carrier's suspension of benefits pursuant to A.R.S. § 23–1026(C) is therefore affirmed....

The suspension precluded benefits from April 24 through May 24, 2011. The ALJ also affirmed the termination of benefits as of May 24, 2011 and denied Kwietkauski's complaint for bad faith and unfair claims processing. Kwietkauski timely requested administrative review of the award, specifically challenging all three of the ALJ's decisions adverse to her. After review, the ALJ affirmed the award.

¶ 7 Kwietkauski timely appeals to this court. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(2) (2003), 23–951(A) (2012), and Arizona Rule of Procedure for Special Actions 10.

## ANALYSIS

¶ 8 Kwietkauski contends the suspension of her benefits was invalid, the termination of her benefits was unjustified, and Sentry committed bad faith in processing her claim. We conclude that the suspension of benefits was in error and set aside the award for that reason.

¶ 9 This court deferentially reviews factual findings of the ICA, but independently reviews its legal conclusions. *PFS v. Indus. Comm'n*, 191 Ariz. 274, 277, 955 P.2d 30, 33 (App.1997). We affirm an ICA decision if it is "reasonably supported by the evidence after reviewing the evidence in a light most favorable to sustaining the award." *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App.2002).

¶ 10 Kwietkauski asserts that the ICA should have overturned the suspension of her benefits because she did not commit a "wrongful act" in asserting her intention to record the IME. The ALJ ruled the suspension of benefits was proper because Kwietkauski failed to give prior notification of her intent to tape record the IME. The ALJ concluded that this constituted a wrongful act obstructing the examination.[3]

¶ 11 An employee entitled to workers' compensation must submit to an IME appropri-

---

**3.** Sentry suggests in its answering brief that Kwietkauski's "wrongful act" included not only her failure to give advance notification of her intention to record the IME, but also other actions that made Dr. McLean uncomfortable. We note, however, that the ALJ based his decision on Kwietkauski's intention to tape record the IME without prior notification and made no specific findings regarding any other conduct by Kwietkauski.

ately scheduled by an insurance carrier. A.R.S. § 23–1026(A). The IME must be "reasonably convenient for the employee" and give regard to the employee's "physical condition and [ ] ability to attend." A.R.S. § 23–1026(A), (B). The employee is entitled to have a physician of her choice attend and observe the examination, "if procured and paid for" by the employee. A.R.S. § 23–1026(B). In accordance with A.R.S. § 23–1026(C), however, an employee must not obstruct the examination:

> If the employee refuses to submit to the medical examination *or obstructs the examination*, his right to compensation shall be suspended until the examination has been made, and no compensation shall be payable during or for such period.

(Emphasis added.)

■ ¶ 12 Our cases interpreting and applying A.R.S. § 23–1026(C) have determined that benefits may not be suspended in the absence of a "wrongful act" by the employee. *Edmunds v. Indus. Comm'n*, 126 Ariz. 486, 487, 616 P.2d 946, 947 (App.1980); *Garza v. Indus. Comm'n*, 17 Ariz.App. 525, 530, 498 P.2d 599, 604 (1972). The employee must "volitionally" refuse to attend or obstruct the IME. *Edmunds*, 126 Ariz. at 488, 616 P.2d at 948. In *Edmunds*, the court found the ALJ erred in suspending benefits when the claimant's failure to attend the IMEs was due to post office error. *Id.*

¶ 13 Kwietkausi was entitled under Arizona law to make a recording of her IME. In *Burton v. Industrial Commission*, 166 Ariz. 238, 242, 801 P.2d 473, 477 (App.1990), this court ruled that a claimant was entitled to use a tape recorder during an IME. The court explained that allowing the use of a tape recorder was a reasonable alternative to paying a physician to be present—statutorily authorized by § 23–1026(B)—which would be "unduly burdensome to many claimants." *Id.* at 242, 801 P.2d at 477. The use of a tape recorder does not turn the examination into an adversarial proceeding because a recorder "operates silently, asks no questions, and merely records any audible sounds." *Id.* Under *Burton*, therefore, Kwietkauski was entitled to tape record the IME, a fact Sentry acknowledges in its answering brief.

■ ¶ 14 Kwietkauski did not commit a "wrongful act" by asserting her intention to use a tape recorder during her IME with Dr. McLean. Asserting her legal right under Arizona law to record the IME cannot, as a matter of law, be considered "wrongful." An examining doctor is entitled to choose not to conduct IMEs that are recorded. But a doctor's policy or preference does not trump a workers' compensation claimant's right to record the IME.

¶ 15 Sentry argued, and the ALJ accepted, that Kwietkauski needed to notify Sentry or Dr. McLean ahead of time of her intention to tape record the IME. Sentry argues that if Kwietkauski had provided such notice, it could have avoided the cost of scheduling the examination. Sentry, however, cites no legal authority requiring a claimant to provide prior notification to the doctor or carrier of an intent to record an IME. Nor have we identified any such legal requirement. Neither the insurance carrier nor Dr. McLean's office requested that Kwietkauski provide advance notice of any intention to record the IME. Nor was she given advance notice of Dr. McLean's policy of not conducting IMEs that are recorded. Under these circumstances, Kwietkauski did not commit a wrongful act and did not obstruct the IME by asserting her right to record the IME.

■ ¶ 16 Sentry alternatively argues that even if the suspension of benefits was error, the issue is moot because the ALJ affirmed the closure of Kwietkauski's claim in the same decision. But suspension of Kwietkauski's benefits resulted in a direct monetary injury by cutting off her statutory right to workers' compensation benefits from April 24, 2011 to May 24, 2011, the date of termination. Kwietkauski is entitled to the benefits she was owed during the period of suspension prior to closure of her claim. Accordingly, her appeal of the suspension of benefits is not moot.

■ ¶ 17 We limit our review to the suspension of benefits issue. Section 23–951(D) confines the power of this court in reviewing ICA decisions to "either affirming or setting aside the award, order or decision." If a portion of an award must be set aside, we

ordinarily set the award aside in its entirety and do not review other portions of the award. *Estate of Wesolowski v. Indus. Comm'n,* 192 Ariz. 326, 332, ¶ 25, 965 P.2d 60, 66 (App.1998). When a consolidated decision separately disposes of severable claims, however, this court may "severably dispose of them upon review." *Id.* (citing *Prof'l Furniture Serv. v. Indus. Comm'n,* 133 Ariz. 206, 209, 650 P.2d 508, 511 (App.1982)). In this case, we are not addressing a consolidated decision with severable claims. Our resolution of the suspension of benefits issue requires us to set aside the decision of the ICA in its entirety. Accordingly, we do not address the termination of benefits and the rejection of Kwietkauski's complaint of bad faith and unfair claims processing.

## DISPOSITION

¶ 18 The award is set aside.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and MARGARET H. DOWNIE, Judge.