NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MARIA C. NERI, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF
ARIZONA, *Respondent*,

PHOENIX UNION HIGH SCHOOL DISTRICT,
*Respondent Employer*,

ARIZONA SCHOOL ALLIANCE FOR WORKERS
COMPENSATION, *Respondent Carrier*.

No. 1 CA-IC 17-0012
FILED 11-30-2017

---

Special Action - Industrial Commission
ICA Claim No. 20153-230122
Carrier Claim No. 2015001582A
The Honorable Robert F. Retzer, Administrative Law Judge

**AFFIRMED**

---

COUNSEL

Mari C. Neri, Glendale
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Lester Norton & Brozina, PC, Phoenix
By Rachel Parise Brozina
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Jon W. Thompson and Chief Judge Samuel A. Thumma joined.

---

**J O N E S**, Judge:

**¶1**　　　　Maria Neri petitions this Court for special action review of an Industrial Commission of Arizona (the Commission) decision upon review, in which the administrative law judge (ALJ) affirmed suspension of Neri's benefits from May to September 2016 and awarded her compensation for additional right knee treatment under Arizona Revised Statutes (A.R.S.) section 23-1026(A).[1]　For the following reasons, we affirm the suspension and award.

## FACTS[2] AND PROCEDURAL HISTORY

**¶2**　　　　In November 2015, Neri fell, injuring her knee and head, while working as an interpreter and receptionist at a recruitment event for the Phoenix Union High School District.　She was provided first aid on the scene and submitted a claim for workers' compensation benefits that night. Neri then went to the emergency room for an evaluation where she was diagnosed with various abrasions, neck and back strain, and a head injury.

---

[1]　　Absent material changes from the relevant date, we cite a statute's current version.

[2]　　We view the evidence in the light most favorable to sustaining the Commission's findings and awards.　*Polanco v. Indus. Comm'n*, 214 Ariz. 489, 490-91, ¶ 2 (App. 2007) (citing *Roberts v. Indus. Comm'n*, 162 Ariz. 108, 110 (1989)).

¶3            After the fall, Neri saw Michael Goodwin, P.A.-C, several times. Goodwin found Neri had experienced an accidental fall resulting in abrasions on one knee, strain of both knees and legs, a headache, and traumatic myalgia. He prescribed painkillers and a home bandage regime for her knees and also referred Neri to physical therapy.

¶4            Michael Powers, M.D., performed an Independent Medical Examination (IME) of Neri on behalf of Arizona School Alliance (the Carrier) in December 2015. Dr. Powers concluded Neri did not have any direct head trauma. He also asserted believed that because she had recounted similar symptoms following a workplace accident in 2012 that did not involve head trauma, "it seems most probable that her cognitive complaints are a reflection of cognitive inefficiency due to anxiety and depression rather than a traumatic brain injury." He recommended a formal neuropsychological evaluation to evaluate Neri's reported cognitive impairment.

¶5            Neri then saw Sanjay Patel, M.D., who diagnosed her with post-concussion syndrome, a mild traumatic brain injury, bilateral leg and knee pain, and upper back pain. Dr. Patel recommended cortisone injections for her right knee and that she follow up with an orthopedic surgeon if the injections did not help. He also recommended she follow through with physical therapy and referred her to neuropsychologist John Walker, Psy. D., for further evaluation.

¶6            In the fall of 2016, Russell Meldrum, M.D. saw Neri twice and reviewed an MRI scan of her right knee. Dr. Meldrum noted a meniscal tear in an area Neri was not experiencing pain and possible "plica," or pain caused by irritation of the *plicae alares*,[3] which could be treated with injections or surgery if injections would affect her diabetes. He believed the knee pain resulted from a degenerative condition, however, rather than any trauma. When asked if Neri needed surgery or injections as a result of the workplace accident, Dr. Meldrum stated: "I doubt it."

¶7            At the Carrier's request, Neri underwent an IME with orthopedic surgeon, Adam Farber, M.D. Dr. Farber described Neri's right knee pain as "out of proportion to objective findings." He attributed the "right knee abrasion and subsequent patellofemoral pain" to the workplace accident but added that her morbid obesity was a contributing cause. He recommended injections and additional physical therapy but concluded

---

[3]        *Plicae alares* are "a pair of folds of the synovial membrane of the knee joint." Dorland's Illustrated Medical Dictionary 1488 (31st ed. 2007).

she was not a surgical candidate because her subjective complaints were not supported by pathology that would warrant surgical intervention.

¶8 Neri was scheduled to see Jeannine Morrene-Strupinsky, Ph.D., for a neuropsychological IME, but the exam was rescheduled when Neri refused to proceed without being allowed to record the exam. Before the next appointment, an employee of Dr. Morrene-Strupinsky advised the Carrier and Neri's former attorney that the National Academy of Neuropsychology rules do not allow neuropsychology test questions to be recorded. However, Dr. Morrene-Strupinsky did ultimately agree to allow Neri to record the interview portion of the exam. At the next appointment, Neri once again refused to proceed without recording the entire exam, and the exam was then terminated. After the second cancelled exam, the Carrier discontinued Neri's benefits.

¶9 Neri finally submitted to a neuropsychological IME with James Youngjohn, Ph. D. Dr. Youngjohn determined Neri may have sustained a minor closed head injury but was "predisposed to complaint of physical problems for psychological reasons," and concluded Neri did "not suffer from any neuropsychological or psychological condition causally related to her 11/07/15 work injury." Dr. Youngjohn did not prescribe any treatment and identified no restrictions on Neri's work or activity. Following this exam, the Carrier agreed to resume processing Neri's claim.

¶10 In a December 2016 decision, the Commission agreed Neri obstructed the neuropsychological IME and upheld the suspension of benefits from May to September 2016. The Commission also awarded Neri continued treatment of her knee, including cortisone injections and physical therapy. Neri timely filed a request for review of the Commission's decision, which was affirmed upon review. Neri then timely petitioned this Court for special action relief. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

**DISCUSSION**

¶11 As an initial matter, we note that Neri's opening brief fails to comply with the Arizona Rules of Civil Appellate Procedure because she neglected to cite to any case law for support. *See* ARCAP 13(a)(7)(A) ("An 'argument' . . . must contain . . . [the a]ppellant's contentions concerning each issue presented for review, with supporting reasons for each contention, and with citations of legal authorities and appropriate references to the portions of the record on which the appellant relies."). As

a self-represented litigant, Neri is held to the same standard of familiarity with required procedures and rules attributed to qualified attorneys. *Smith v. Rabb*, 95 Ariz. 49, 53 (1963). Although we may consider Neri's failure to develop her argument as a waiver, we exercise our discretion and address the merits of the issues raised in Neri's opening brief. *See Clemens v. Clark*, 101 Ariz. 413, 414 (1966) ("[W]e remain inclined to decide cases on their merits.").

**¶12**　　　　On appeal, Neri argues the Commission erred by: (1) finding the suspension of her benefits from May to September 2016 was proper, and (2) rejecting her assertion that she required knee treatment in addition to the award given.[4]

## I.　　Suspension of Benefits

**¶13**　　　　Neri first argues the Commission erred in suspending her benefits from May to September 2016 based upon her failure to cooperate with the neuropsychological IME. We give deference to factual findings of the Commission, but independently review its legal conclusions. *PFS v. Indus. Comm'n*, 191 Ariz. 274, 277 (App. 1997). Furthermore, we affirm a decision by the Commission if it is "reasonably supported by the evidence after reviewing the evidence in a light most favorable to sustaining the award." *Kwietkauski v. Indus. Comm'n*, 231 Ariz. 168, 170 (App. 2012) (citing *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002)).

**¶14**　　　　By statute, at the carrier's request, an employee must submit to an IME for continued compensation of benefits. A.R.S. § 23-1026(A). But "[i]f the employee refuses to submit to the medical examination or obstructs the examination, his right to compensation shall be suspended until the examination has been made, and no compensation shall be payable during or for such period." A.R.S. § 23-1026(C).

**¶15**　　　　Neri argues it was her right to record an IME and, therefore, it was Dr. Morrene-Strupinsky who obstructed the exam. To support this

---

[4]　　Neri also argues: (1) her medical and health rights were violated; (2) she is entitled to additional compensation for June to December 2016 since she could not work because of her injury; and (3) she is entitled to additional compensation for memory impairment treatment from August 2016 until present. However, these arguments were not raised with the ALJ, and we therefore do not consider them. *See T.W.M. Custom Framing v. Indus. Comm'n*, 198 Ariz. 41, 44 (App. 2000) (citing *Norsworthy v. Indus. Comm'n*, 24 Ariz. App. 73, 74 (1975)).

position, Neri relies upon *Kwietkauski v. Industrial Commission*, which held that an employee is entitled to record her IME and her insistence on doing so does not constitute an obstruction of the examination because "the use of a tape recorder does not turn the examination into an adversarial proceeding." 231 Ariz. 168, 171, ¶ 13 (App. 2012) (citing *Burton v. Indus. Comm'n*, 166 Ariz. 238, 242 (App. 1980)). Under *Kwietkauski*, a physician can decline to conduct the IME and refer the employee to an alternative physician, but his policy does not override the employee's right to record. *Id.* at ¶ 14.

¶16        *Kwietkauski* is distinguishable. In *Kwietkauski*, a physician would not allow the employee to record the IME based upon instructions from the carrier. *Id.* at 169, ¶ 40. Effectively, the doctor was acting at the behest of the carrier rather than exercising his own independent medical prerogative. In contrast, here, the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct bars neuropsychologists from releasing the test questions administered in evaluations unless one of a very few exceptions apply, none of which apply to the immediate facts. *Ethical Principles of Psychologists and Code of Conduct* R. 9.11 (American Psychological Association, 2002). We cannot say Dr. Morrene-Strupinsky obstructed the IME by simply observing the ethical rules of her licensed profession, and the record reasonably supports the Commission's finding that Neri obstructed the exam, particularly in light of her violation of the agreement regarding recording that had been reached. The suspension of benefits from May to September 2016 on this basis was proper, and we find no error.

## II.    Knee Treatment

¶17        Neri argues the Commission erred by refusing her request for more comprehensive knee treatment including surgery. We defer to the factual determinations of the ALJ and will reverse the award only if it is unsupported by the evidence. *See supra* ¶ 13.

¶18        Here, the record reasonably supports the Commission's conclusion that the pain and/or injury to Neri's right knee did not warrant surgery. Both Drs. Farber and Meldrum believed Neri's subjective complaints were inconsistent with objective findings and therefore surgically correcting the identified deficiencies was unlikely to alleviate Neri's complaints. However, continued physical therapy and injections could provide relief and were approved. Neri accuses Dr. Meldrum of having changed his diagnosis after being called to testify in front of the Commission. Even if this were true, the Commission accepted Dr.

Meldrum's hearing testimony as persuasive, and it is reasonably supported by the record. Therefore, we find no error.

## CONCLUSION

**¶19** The Commission's decision upon review affirming the suspension of benefits and awarding Neri continued care for her knee in accordance with Dr. Farber's recommendations is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA