IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WANDA M. SMITH, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

STATE OF ARIZONA DEPARTMENT OF CORRECTIONS,
*Respondent Employer*,

THE STATE OF ARIZONA – DOA RISK MANAGEMENT,
*Respondent Carrier*.

No. 1 CA-IC 18-0060
FILED 10-29-2019

Special Action - Industrial Commission
ICA Claim No.  20122-850010
Carrier Claim No. W201204436
The Honorable Rachel C. Morgan, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Sarkisov & Roesch PLLC, Phoenix
By George V. Sarkisov
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent, ICA*

Arizona Attorney General's Office, Phoenix
By Maria A. Morlacci
*Counsel for Respondent Employer and Carrier*

---

**OPINION**

Presiding Judge Michael J. Brown delivered the opinion of the Court, in which Judge Kenton D. Jones and Judge Jennifer B. Campbell joined.

---

**B R O W N**, Judge:

**¶1**         Wanda Smith seeks review of an Industrial Commission of Arizona ("ICA") award finding she sustained no loss of earning capacity ("LEC") as a result of her industrial injury.  Because the award is not supported by competent or substantial evidence, we set aside the award.

**BACKGROUND**

**¶2**         Smith worked for the Arizona Department of Corrections ("DOC") as a Correctional Officer II for approximately 22 years.  In September 2012, she injured her right (dominant) shoulder while participating in a mandatory training exercise.  The respondent carrier, DOA Risk Management, accepted the claim for benefits.  In January 2013, Dr. Cody Olsen performed surgery on Smith's shoulder, but she continued to experience pain.

**¶3**         In 2014, Dr. Olsen recommended a second surgery.  Smith opted to forego the second surgery and returned to light duty work at the DOC.  Smith began missing substantial work, however, to care for her ill husband and quit working at DOC in mid-2014.  While her claim remained open for active medical care, Smith moved to Texas, working for the Texas Department of Corrections as a cook supervisor for about five months in 2015.  She was unable to continue working there because the job required heavy lifting and caused pain in her shoulder.  Smith returned to Arizona and began treatments for her shoulder with Dr. Daniel Capen.  After reviewing an updated MRI, Dr. Capen advised against a second surgery.  In 2016, he discharged Smith as medically stationary and recommended work restrictions that precluded Smith from lifting more than 25 pounds or anything above her head, or performing inmate takedowns if she returned to her date-of-injury employment.

¶4        DOC and DOA Risk Management (collectively, the "State") referred Smith to Dr. Amit Sahasrabudhe for an independent medical examination ("IME"). DOA Risk Management then issued a notice terminating Smith's temporary compensation and active medical treatment, but confirmed that Smith's "[i]njury resulted in [a] permanent disability." The file was forwarded to the ICA to calculate Smith's LEC, if any. The ICA issued an administrative award based on Dr. Sahasrabudhe's IME report, finding that Smith sustained a "general physical functional disability" but suffered no reduction in earning capacity as a result of the 2012 injury. The administrative law judge ("ALJ") granted Smith's request for a hearing as to whether she sustained an LEC.

¶5        The ALJ received testimony from Smith, Dr. Sahasrabudhe, Dr. Capen, and labor market experts Gail Tichauer (for Smith) and Mark Kelman (for the State). Dr. Sahasrabudhe explained that Smith's low-grade partial tear of the rotator cuff was within normal limits, and contrary to Dr. Capen's opinion, permanent work restrictions were unnecessary and she could return to her date-of-injury employment.

¶6        Finding no reduced monthly earning capacity, the ALJ resolved the medical opinion conflict in Dr. Sahasrabudhe's favor and adopted his conclusion that Smith was able to return to work without restrictions. Based on Kelman's opinion that Smith's date-of-injury employment was "readily available on a continuous basis," the ALJ determined she "failed to establish by a reasonable preponderance of the credible evidence" that she had sustained a reduced monthly earning capacity as a result of her 2012 industrial injury. The ALJ supplemented and affirmed the award on administrative review, and Smith timely sought judicial review in this court.

**DISCUSSION**

¶7        In reviewing the ICA's awards and findings, we defer to the ALJ's factual findings but review legal conclusions de novo. *Sun Valley Masonry, Inc. v. Indus. Comm'n*, 216 Ariz. 462, 463–64, ¶ 2 (App. 2007). We will not set aside the award if it is based upon any reasonable interpretation of the evidence; however, we cannot uphold the award if it is "not based upon competent or substantial evidence." *Roberts v. Indus. Comm'n*, 162 Ariz. 108, 110 (1989). "An ALJ must include findings on all material issues in the award." *Landon v. Indus. Comm'n*, 240 Ariz. 21, 24, ¶ 9 (App. 2016) (citing *Post v. Indus. Comm'n*, 160 Ariz. 4, 7 (1989)).

¶8        When calculating an LEC, the goal is to "determine as near as possible whether in a competitive labor market the subject in [her] injured condition can probably sell [her] services and for how much." *Roberts*, 162 Ariz. at 110 (citation omitted).  The burden of proving an LEC initially is on the claimant, "which requires establishing [her] inability to return to date-of-injury employment and either to make a good faith effort to obtain other suitable employment or to present testimony from a labor market expert to establish [her] earning capacity."  *Landon*, 240 Ariz. at 26–27, ¶ 18.  If the claimant meets this initial burden of proof, the burden shifts to the employer to prove "there is employment reasonably available which the claimant could reasonably be expected to perform." *Roberts*, 162 Ariz. at 110; *Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580–82 (1983).

¶9        Smith argues the ALJ's decision award is legally insufficient because it lacks evidence showing her date-of-injury employment was reasonably available.  She contends that a reasonable-availability inquiry must be addressed in an LEC analysis, "even if the injured worker does not have any physical restrictions resulting from the industrial injury."  The State argues the ALJ acted within her authority in adopting Dr. Sahasrabudhe's opinions, which were the foundation of the LEC finding.

¶10        We turn first to whether Smith met her initial burden.  The ALJ did not make any finding that Smith failed to carry her initial burden that she would be unable to perform the duties of a Correctional Officer II, her date-of-injury position.  *See Landon*, 240 Ariz. at 29, ¶ 24 (noting that the ALJ made no findings as to whether the claimant met the burden of showing inability to return to date-of-injury employment or whether a good faith effort was made to find other suitable employment).  Nor did the ALJ make a finding rejecting Smith's testimony that she made efforts to find employment and was unsuccessful.  Instead, the ALJ accepted Dr. Sahasrabudhe's opinion that Smith had no work restrictions as the foundation for its decision, which in turn formed the basis for Kelman's opinion that Smith would be eligible for rehire at her date-of-injury job.  By failing to address whether Smith met the initial burden of proof, the ALJ overlooked the principle that even if a claimant does not have injury-related work restrictions, the claimant may still receive an LEC award.  *See* A.R.S. § 23–1044(G)(2) (stating that an "injured employee may present evidence showing that . . . inability to obtain suitable work is due, in whole or in part, to the industrial injury or limitations resulting from the injury"); *Landon*, 240 Ariz. at 27, ¶ 18 (recognizing that a claimant is not required to prove that an industrial injury was the sole cause of a loss of earning capacity).  Regardless, the ALJ proceeded to analyze whether suitable employment

was reasonably available, an analysis that occurs only once the burden shifts to the respondent employer or carrier. *See Zimmerman*, 137 Ariz. at 580–81.

¶11 Notwithstanding the ALJ's lack of a specific finding regarding Smith's initial burden, the record shows Smith presented evidence showing she could not perform the work required to return to her date-of-injury employment, and she made a good faith effort to obtain other suitable employment. Smith returned to her job at the DOC after her injury but was assigned light duty only. Rather than working closely with inmates as she did before her injury—escorting them and doing pat-downs—she was assigned to the security desk to search employees' belongings as they entered and exited the building. As to her ability to return to her job as a Correctional Officer II, the ALJ noted that Smith "testified that she cannot return to her date of injury job because she is unable to hold a gun because of right shoulder weakness." Smith submitted into evidence a job description for her date-of-injury employment confirming that officers "[e]mploy[] weapons or force to maintain discipline and order among prisoners, if necessary." She testified about problems she encountered handling a gun after the injury, including her inability to hold it "straight out because my shoulder was too weak."

¶12 Smith testified she made efforts to obtain work when she returned to Arizona from Texas, including applying to Yavapai Plumbing and Heating, Pure Water, Inc., Residence Inn, Motel 8, Helping Hands In-Home Care, Yavapai Regional Medical Center, and Dick's Sporting Goods, but was unsuccessful in even obtaining an interview. *See Roberts*, 162 Ariz. at 110 (concluding the claimant met his burden to show he made a reasonable effort to secure employment by testifying he tried to obtain work but was unsuccessful). Smith also testified she thought she was having a hard time finding a job because of her age—she was 69 at the time of these job searches. Based on this record, Smith met her initial burden.

¶13 With the burden shifting to the State, Smith argues the ALJ erred by finding her date-of-injury employment was reasonably available because insufficient evidence supports that finding. Determining the amount of an injured worker's LEC, if any, is governed in part by A.R.S. § 23–1044, which requires consideration of, "among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform after the injury, any wages received for work performed after the injury and the age of the employee at the time of injury."

¶14      To prove with reasonable certainty that Smith could secure a job, the State was required to present evidence of, among other things, "the competition for available positions . . . and the likelihood that employers will hire someone with a previous disability although [she] is now fully qualified to perform the work." *Dean v. Indus. Comm'n*, 113 Ariz. 285, 287 (1976). "[E]vidence of the number of openings, without evidence of the number of applicants or the willingness of the employers to hire someone with a previous disability" is insufficient to sustain an award. *Roberts*, 162 Ariz. at 111 (citing *Roach v. Indus. Comm'n*, 137 Ariz. 510, 512–14 (1983)). The State also needed to show how Smith's prior injury will affect her ability to compete for the available positions. *See Roach*, 137 Ariz. at 514; *Dean*, 113 Ariz. at 287.

¶15      The ALJ relied on Kelman's opinion that work in Smith's date-of-injury employment as a corrections officer is "readily available on a continuous basis." In his written report, Kelman identified several suitable employment options based on Smith's background and ability to work, but the only option he presented that resulted in no LEC was the date-of-injury employment. Other positions available at the DOC resulted in an LEC and a monthly entitlement of $230.09. Kelman spoke with a recruiter at the DOC to inquire about the availability of correctional officer positions at two facilities. He testified there are "hundreds" of openings for correctional officers, and based on his experience, "there is a strong need for people in facilities to be correction officers."

¶16      Kelman acknowledged, however, that he did not speak with anyone at the DOC to see if Smith's date-of-injury job as a Correctional Officer II would be available for Smith or if she was actually eligible for rehire. Nor did he identify how many applicants there were for that position. He listed the job title as "correctional officer" and noted that "4/6" are "qualified applicants." Notably, he failed to clarify whether only six people applied for the job total and four of them were qualified, or whether "4/6" was an estimate of the ratio of qualified to unqualified applicants. The number of openings alone fails to tell us anything about whether a job is "reasonably available." *See Roach*, 137 Ariz. at 513–14 (explaining the "flaw in basing the job availability on the bald statement that any specific number of openings has occurred").

¶17      Kelman also failed to address the willingness of the DOC to hire someone with a previous work-related injury, like Smith. In *Roach*, our supreme court set aside the ALJ's award because there was no testimony offered on the willingness of the Arizona State Prison to hire a person with a prior work-related injury. 137 Ariz. at 514–15. The court "assume[d] that

agencies of this state do not practice employment discrimination," but it found "nothing affirmative in the record regarding the likelihood of the Arizona State Prison to hire persons with previous work-related injuries." *Id.* Because the record here lacks any evidence that DOC would hire a person with a previous industrial injury as a Correctional Officer II, the State failed to meet its burden to show that Smith's date-of-injury employment was reasonably available. *See Arden-Mayfair v. Indus. Comm'n*, 158 Ariz. 580, 584 (App. 1988) (finding the employer failed to sustain its burden on an LEC claim because the record lacked evidence showing the employee would have an equal hiring opportunity in competition with others given his previous industrial injury).

¶18 Nothing in the award shows the ALJ considered Smith's age at the time of her injury, as required by A.R.S. § 23–1044(D). She was 64 when the injury occurred, 69 when it became stationary, and 70 at the time she testified. The State has not identified, nor have we located, any evidence in the record showing a Correctional Officer II job was reasonably available to a 64-year-old employee with a previous industrial injury and a permanent impairment.

¶19 Additionally, the record is silent as to whether the ALJ considered Smith's age during the pendency of her LEC claim—the time during which she would be expected to apply for a Correctional Officer II position. The State argues Smith's current age is not relevant because it is not specifically addressed in A.R.S. § 23–1044(D), which provides in part that "consideration shall be given, among other things, to . . . the age of the employee at the time of the injury."

¶20 Based on the statute's plain language, the list of relevant factors is not exhaustive. *See* A.R.S. § 23–1044(D). Thus, the statute does not preclude consideration of Smith's age (as of the time of her job search or when she testified) as relevant to the determination of whether her date-of-injury employment was reasonably available. Given Smith's previous injury and her existing permanent impairment, it is illogical to believe that her age would not be a factor in whether DOC would be reasonably likely to hire her as a Correctional Officer II. *Cf. Zimmerman*, 137 Ariz. at 582 (explaining that to establish residual earning capacity, there must be evidence of suitable and reasonably available job opportunities that the claimant would reasonably be expected to perform considering her physical capabilities, age, training, and prior work experience).

## CONCLUSION

**¶21** Because the record lacks substantial or competent evidence showing that Smith's date-of-injury employment as a Correctional Officer II is reasonably available to her, we set aside the award.

